## BIRDSEY VS. BUTTERFIELD.

SALE: FRAUD: DAMAGES RECOUPED: MEASURE OF DAMAGES. (1-3) *Action for price of cattle sold; Recoupment of damages for fraud in sale.*
REVERSAL OF JUDGMENT. (4-6) *For rejection of evidence.* (7) *For different view taken by this court of the weight of evidence.*
PRESUMPTION. (8) *As to the law of another state.*

1. The vendor of cattle made *declarations of opinion* as to their weight, *which he knew to be false,* and the vendee was induced by those declarations to purchase the cattle at a certain price per head. He was not aware that the vendor *knew* (approximately) their true weight; and it was in his power, without any great difficulty, to have had them weighed before agreeing to purchase. In an action upon a note given for a part of the purchase price of the cattle, the jury having found the sale to have been effected by fraud and deceit, and having awarded a certain sum to defendant by way of recoupment for his damages resulting from such fraud, a judgment pursuant to the verdict is here affirmed.

2. The fact that the vendee weighed the cattle *before making any payment thereon,* or giving the note here in suit, will not prevent his recouping damages for the vendor's fraud; it appearing that he was not aware, when such payment was made and the note given, that the plaintiff had actual knowledge that the statements made by him were false.

3. The cattle having been purchased by defendant at Chicago, *the measure of his damages* is the difference between their actual value in the Chicago market at the time of the purchase, and the value which they would have had in the same market if their weight had been as represented.

4. Error in the rejection of evidence is *cured* by its subsequent admission.

5. Where the purpose for which evidence is offered is not obvious on its face, the party offering it should inform the court what his object is, if he would avail himself of any error in rejecting the evidence.

6. This court will not reverse a judgment for the refusal of the court be-low to permit a witness on cross examination to be asked a question upon a subject not gone into upon his examination in chief, even where it would not have been regarded as error if the court below, in determining the latitude to be allowed in cross examination, had per mitted such question to be asked.
7. This court cannot reverse a judgment merely because its view of the weight of evidence differs from that of the jury, there being some evi-dence which would warrant the verdict.
8. In the absence of proof to the contrary, it must be *presumed* that the statutes of other states in relation to the validity of oral contracts for the sale of chattels are the same as our own.

APPEAL from the Circuit Court for *Columbia* County.

Action for an unpaid balance of $264.83, upon a promissory note of defendant, given for part of the purchase price of certain cattle sold to him by plaintiff and one Ingalsbe. Defendant, by his answer, sought to recoup damages which he claims to have sustained by reason of false and deceptive representations of plaintiff and Ingalsbe as to the weight of the cattle. On the trial, the defendant testified in his own behalf that the note was given in part payment for fifty-seven head of cattle, purchased by him of plaintiff and Ingalsbe, and was made in the office of one Green, at the stock yards in Chicago. He first saw the cattle in the cars at the Chicago stock yard, in care of. *Birdsey* and Ingalsbee; asked what they were going to weigh; and Ingalsbe said a little over 900 pounds. *Birdsey* proposed to bet that they would weigh over 925 pounds. Witness asked Ingalsbe what the cattle would weigh, and was told over 900 pounds. "I said to him, 'If you think sure they'll weigh over 900, I'll give you fifty cents a head more than these parties offered.' He said ' one dollar,' and I said, 'I'll buy them.'" Defendant then weighed the cattle, and found the average weight to be between 834 and 835 pounds. The bargain was closed in Green's office, where witness told Ingalsbe and plaintiff that he wouldn't settle if they had weighed the cattle, which they then denied, and he then gave a check and the note in

settlement. Stock cattle were divided on 900 pounds, the difference in heavy and light "stockers" being from $1.00 to $1.50. Witness did not know that the cattle had been weighed, when he gave the note and check. William H. Butterfield, a brother of defendant, testified that he was present at the settlement in Green's office in Chicago; that he then charged plaintiff and Ingalsbe with having weighed the cattle in Milwaukee, which they denied. On cross examination, witness was asked by plaintiff's counsel, what these cattle were worth per head in Chicago at the time of sale; but the question was excluded on defendant's objection. Two witnesses for defendant then testified to a conversation had with plaintiff at his house, in which he said that Ingalsbe had weighed the cattle in Milwaukee, and had told him (*Birdsey*), on the way to Chicago, what they weighed. The deposition of Harley Green was read, in which he testified to the settlement in his office at the Chicago stock yards; that defendant there claimed that plaintiff and Ingalsbe had told him the cattle would weigh 925 pounds, and that they did not deny this, but Ingalsbe replied that he thought the cattle would weigh about 900 pounds. Deponent saw the cattle; they were "stockers;" the distinction between light and heavy stockers being about 900 to 1,000 pounds, with from fifty cents to one dollar difference in value.

The plaintiff testified in rebuttal, that Ingalsbe weighed the cattle in Milwaukee without his knowledge, but told him, either at the Fox House in Milwaukee, or at Oak Creek on the way to Chicago, that he had weighed the drove of seventy-four head, and that they averaged 889 pounds, before feeding. Defendant asked Ingalsbe, at the stock yard in Chicago, what the cattle would weigh, and was told about 900 pounds; he then asked witness the same question, and he, witness, offered to bet a new hat they would weigh 925. "I expected they would weigh that much more then than in Milwaukee when empty, because they had been there fed and watered, and would increase in weight anywhere from eight to twenty pounds."

Seventeen head of fat cattle were sorted out, before *Butterfield* bought. Defendant paid $41 a head for the fifty-seven head. "He (defendant) said he would weigh them. I said I could tell him nigh enough. He said, ' What? ' I said, ' About 840 pounds.' Then he said he would weigh them to satisfy himself. I did not at that time know their exact weight. It was my judgment or opinion. Defendant made no complaint till the settlement next day in Green's office, when his brother said, ' George, I wouldn't settle for these cattle. They have weighed them in Milwaukee; bet a hundred dollars on it.' We made no answer that I recollect." Plaintiff was then asked what the cattle sold to *Butterfield* were worth by the cwt. in the Chicago market at the time of sale. The question was excluded by the court; but afterwards, upon re-direct examination, plaintiff was allowed to testify upon this point.

Ingalsbe testified that he weighed the cattle in Milwaukee, and the average weight of seventy-four head was 889 pounds and a fraction; that they were very empty when weighed, but were afterwards fed; and that he told *Birdsey* the weight at Fox's eating house in Milwaukee.

The instructions given, and those refused, will sufficiently appear from the opinion.

Verdict for defendant, and judgment dismissing the complaint at plaintiff's costs; from which judgment plaintiff appealed.

*E. E. Chapin*, with whom was *E. P. Smith*, for appellant, insisted that if a seller represented what he himself believed as to the quality of an article sold, and left the determination to the buyer, there was no fraud. 2 Kent's Com., 486; *Taylor v. Scoville*, 54 Barb., 34. Defendant acted upon his own reason and his own judgment as to the quality and weight of the herd. See Kerr on Frauds, 77, 78.

The law does not afford indemnity against one's own indolence and folly, or a careless indifference to the ordinary means of information. Every person reposes confidence at his peril

in the opinion of others, where he has equal opportunity to form and exercise his own judgment. *Davis v. Meeker*, 5 Johns., 354, and cases cited. A vendee of personal property can not, in an action on a note given for the purchase price, recoup his damages sustained by reason of mere false representations made at the time of sale as to the quality or value of the property, the falsity of which might have been discovered by the exercise of reasonable diligence. *Kennedy v. Crandall*, 3 Lans., 1; *Slaughter v. Gerson*, 13 Wall., 379. To the point that the court erred in refusing the first instruction asked by plaintiff, counsel cited *Veasey v. Doton*, 3 Allen, 380; *Salem India Rubber Co. v. Adams*, 23 Pick., 256; *Dickinson v. Lee*, 106 Mass., 558; *State v. Green*, 7 Wis., 676; *Henshaw v. Bryant*, 4 Scam., 37; *Bell v. Henderson*, 6 How. (Miss.), 311; Kerr on Frauds, 77.

Again, upon discovering the fraud, if any, defendant, before settlement next day, should have offered an absolute return of the property and a total disaffirmance of the contract. And after settling with full knowledge of the alleged fraud at the time of settlement, he can have no relief, either at law or in equity, against his voluntary act. *Parsons v. Hughes*, 9 Paige, 591–594. The giving of the check and note after the discovery of the real weight of the cattle, and after the charge and denial of their being weighed in Milwaukee, evidenced either, first, that by the alleged representations defendant was not induced to make the purchase, but relied upon his own judgment, or, second, a waiver of the fraud, if any, and an affirmance of the contract. *Bronson v. Wiman*, 4 Seld., 182; *S. S. R. Co. v. Row*, 24 Wend., 73; *Lloyd v. Brewster*, 4 Paige, 537. Defendant having resorted to other means of knowledge open to him, chose thereby to judge for himself, and can not now avail himself of the plea that there were misrepresentations, or that he acted on the faith of the misrepresentations. *Atwood v. Small*, 6 Cl. & Fin., 232; *Jennings v. Broughton*, 17 Beav., 234; *Clapham v. Shillito*, 7 id., 146.

The court erred in not permitting defendant's brother, on his cross examination, to state how much the cattle were worth in Chicago. 1 Greenl. on Ev., § 446.

*E. Taylor* and *A. G. Cook*, for respondent, stated that the defendant did not claim damage by reason of plaintiff's and Ingalsbe's representations of the weight at the time of purchase, had such representations been merely matter of opinion, but because the cattle had been previously weighed by them, and they, knowing their weight, stated a positive falsehood in regard thereto, which induced defendant to make the purchase, without knowledge that they had weighed the cattle until after settlement. See as to this distinction, Kerr on Fraud and Mistake, 77–82.

The following opinion was filed at the June term, 1873.

COLE, J. A considerable portion of the brief filed on the part of the plaintiff is devoted to a discussion of questions of fact arising upon the testimony — matters which are not open for examination and review in this court. We cannot, of course, reverse the judgment because our view of the weight of evidence may differ from that taken of it by the jury, or because we might have reached a different conclusion from what the jury did. The only question upon this branch of the case is, whether the jury was warranted in drawing the inference they did in regard to there being fraud in the sale. Upon that point there is some conflict in the statement of the parties who made the contract and knew what really was said at the time of sale. The foundation of the defense is, that the plaintiff and Ingalsbe were guilty of fraud and deceit when they sold defendant the cattle, in part payment for which the note in suit was given. Was there evidence in the case in support of that defense? It is impossible to affirm there was not. In its charge to the jury, the court very clearly stated the ground of the defense, and what was essential to establish it, by telling them that in order to sustain it they must find from the evidence that the cattle

had been weighed at Milwaukee, and that the plaintiff and In-galsbe knew their weight, and at the time of the sale knowingly and falsely represented their weight to be greater than they had ascertained it to be by actual weighing; and that these repre-sentations were made for the purpose of inducing the defendant to purchase the cattle. And he told them that they must fur-ther find that the defendant relied on these representations, and was deceived by them to his injury. This was the substance of the general charge upon that point, and it is also, in substance, the first instruction asked by the plaintiff and given by the court. Now, the question is, whether there was any testimony offered on the trial from which the jury might have found that the plaintiff and Ingalsbe represented at the time of sale that the fifty-seven head of cattle would weigh 900 lbs. per head and upwards, and that these representations were made with a fraud-ulent intent for the purpose of inducing the defendant to pur-chase at the price agreed upon. It must be conceded that the defendant states in his testimony that the plaintiff and Ingalsbe made these representations or statements in regard to the weight of the cattle he bought of them. This, however, they deny, and say that their statements related to the average weight of the seventy-four head of cattle, and were not made with the inten-tion of influencing the conduct of the defendant one way or the other. Of course, it was the province of the jury to consider these conflicting statements, and they were at liberty to attach more credit to the testimony of the defendant than to that of the plaintiff and Ingalsbe, if in their judgment it was entitled to the more confidence. About this there can be no question.

If the plaintiff and Ingalsbe did in fact make these represent-ations or statements in regard to the weight of the fifty-seven head, there can be no room to doubt that they knew them to be untrue. For it clearly appears from their own testimony that the entire lot of seventy-four head had been weighed the day before in Milwaukee, and fell short of an average weight of 900 lbs. per head. At Chicago, seventeen head of what are

called "fat cattle" were assorted or taken out of the herd, and these were admitted to weigh considerably more per head than the "stock cattle" sold the defendant. It is true, the cattle when weighed at Milwaukee were empty of feed and water, and the evidence showed they would weigh from eight to twenty lbs. more per head after full feeding. But the plaintiff and In-galsbe had no ground whatever for honestly supposing that after taking out the "fat cattle," the others would weigh on an average 900 lbs. per head. And while it may be said they did not know the actual weight of the fifty-seven head, because they had not been separately weighed, yet they had the best means of knowing, and they doubtless did know, that they could not possibly weigh 900 lbs. per head, as represented. And it is no answer, in view of the facts, to say that these state-ments in regard to the weight of the cattle at that time were mere expressions of opinion or judgment upon the subject —- *simplex commendatio;* for they had actually weighed the whole, according to their own admissions, and from the nature of the case, knew that the stock cattle would weigh less than 900 lbs. per head. They had actual positive knowledge upon the sub-ject, and cannot be considered as expressing a conjectural opin-ion where they might be honestly mistaken. Hence, if these representations in relation to the weight of the cattle were in fact made — as we must assume they were, after the verdict of the jury under the charge which was given — then it would also seem obvious that they must have been made with no other purpose or design than to influence the conduct of the defend-ant and to induce him to buy and pay the price agreed. It ap-pears from the testimony, that in the Chicago market, at the time of the sale, what were known as light and heavy stock cattle, divided upon 900 lbs.,— cattle below that weight being of less value per hundred than cattle above that weight. These statements in regard to the weight were quite material, affecting the market value of the cattle, and would naturally induce the defendant, if he relied on them, to pay more for the cattle than

he otherwise would have been willing to, or more than he would have paid had he possessed the same accurate knowledge upon the subject that the plaintiff had.

But it is said that the defendant had no right to rely on these statements, even if made as claimed, because the cattle were at hand where they could be seen; besides, the scale house was within a short distance, by means of which the true weight could be readily ascertained. It is true the defendant could have weighed the cattle; in fact it appears that he did weigh them immediately after he agreed to buy them at $41 per head. And on such weighing, it was found that the average weight was less than 835 lbs. per head. And it is said the defendant was then bound to decline to take the cattle, and he could not thereafter insist that he had been misled by the statements of the plaintiff if he consummated the purchase. But it will be borne in mind that at this time the defendant was ignorant of the fact that these cattle had been weighed with the the other lot in Milwaukee. This important fact he did not know, for it had been most carefully concealed from him. He might be willing to stand by the contract when he supposed it had been entered into with equal means of information on both sides in regard to the weight. He had a right to assume that the plaintiff and Ingalsbe were dealing fairly, and would not state that the cattle would weigh, in their opinion, 900 lbs. per head and upwards, when they well knew to the contrary. But it seems they stated to him what they knew to be false, and they endeavored to impress him with the belief that the cattle "were going to weigh over nine hundred," when by actual weight they had ascertained that they must fall considerably below that weight. It was the concealment of this fact from the defendant, which, under the circumstances, makes their conduct fraudulent; and it is no sufficient answer to say that the defendant should have been more vigilant, more suspicious, and more upon his guard. These remarks are intended as an answer to the general discussion indulged in on the part of

plaintiff's counsel, wherein it is insisted that the testimony fails to show any fraudulent representations in relation to the weight of the cattle at the time of sale, and that the verdict of the jury is wholly unwarranted by the evidence.

There are some exceptions taken to the ruling of the court on the admission or exclusion of testimony, and to the refusal of the court to give certain instructions, and likewise to the charge as given, which require some further notice.

In consequence of the fraudulent representations of the plaintiff and Ingalsbe, the defendant claimed that he was deceived and imposed upon, and that he was entitled to recover, by way of counterclaim or defense, the damages he had sustained by their fraudulent acts. And upon the question of damages the court, at its own instance, charged the jury that if they found that the defendant was entitled to recover anything on his claim, it would be the difference between what would have been the value of the cattle had they been as represented in weight, and their value according to their actual weight at the time of sale. It seems to us that this was laying down the correct rule of damages. If there was fraud in the contract, the defendant might recoup his damages when sued on the note given in part payment for the cattle. This is what he attempted to do, and he was entitled to recover the difference in value between the cattle as they were and as they would have been in the Chicago market, had they corresponded with the representations as to weight, as a defense in whole or in part to the action upon the note.

Such being the rule of damages, it is claimed that the court erroneously excluded certain evidence offered by the plaintiff to show what the cattle were worth in the Chicago market at the time of sale. The plaintiff, while being examined as a witness, was asked the question : " What were these fifty-seven head of cattle, which were sold to *Butterfield*, worth in the Chicago market at the time of sale, by the cwt.? " This question was objected to and ruled out. But subsequently, on the re-

direct examination, the witness was permitted to answer the question, and then stated what such cattle were worth in that market. This obviously cured any error there might have been in excluding the testimony in the first instance.

The witness William H. Butterfield was likewise asked what the cattle were worth in Chicago, at the time of sale, per head; and the question, being objected to by the defendant, was excluded. It does not appear upon what ground the court sustained the objection to this question, and I confess I have some difficulty in affirming this ruling. I am not, however, prepared to say that as presented by the record it was erroneous. The question was asked the witness on cross examination, while the subject in respect to the value of the cattle was not gone into on his direct examination. The question may have been ruled out on the ground that it was not proper cross examination. The court might have thought, if the plaintiff wished to examine the witness upon that matter, he should do so by making the witness his own. Moreover there is some reason for saying that the object of the question might not have been understood by the court when asked. The purpose of this question was not stated, and even now, in view of the argument of the counsel for the plaintiff upon this point, we are not certain that the object was to show that the defendant had sustained no damage by the fraud. In *Beard v. Dedolph*, the rule is laid down, that it is the duty of a party, when evidence offered by him is excluded because inadmissible for the purpose for which it is offered, to inform the court of the object in offering it. 29 Wis., 136. Within this rule it may well be held that the question was properly excluded, though to my mind the better ground upon which to sustain the ruling is that the value of the cattle was not a matter gone into on the direct examination. If the object of the question was to test the knowledge of the witness in regard to the Chicago market for cattle such as those sold the defendant, this should have been stated.

The other questions asked the witness, as to whether he made an offer for these cattle at Columbus on his return from Chicago, and what the cattle were worth at that place, were entirely irrelevant to the issue, and were properly excluded.

We do not deem it necessary to notice the other exceptions taken to the rulings of the court on the admission of evidence, or to the charge of the court. They are in our opinion untenable, and should not reverse the judgment. The plaintiff asked the court to give three instructions, which were refused. The first instruction was as follows: " If the parties who sold the cattle, and defendant, had equal access to the means of information, or equal opportunity of ascertaining the truth of the alleged statements as to weight, then a mere representation, though false, as to the weight of the cattle, is immaterial, and does not bind the plaintiff."

The objection to this instruction is, that it was not pertinent to the facts disclosed on the trial. For it is admitted that the seventy-four head of cattle had been weighed at Milwaukee, and the plaintiff knew this fact. He knew from actual weight that the stock cattle could by no possibility weigh "nine hundred pounds per head and upwards." This fact was concealed from the defendant. The parties did not stand upon an equal footing in regard to the subject matter of the contract, and had not equal means for ascertaining the truth of the statements as to weight. There was a fraudulent concealment of the weight, while affirming that it was greater than they knew it to be.

The second instruction was this: " If the jury shall find that after ascertaining the weight of the cattle in question in this action—the fifty-seven head—the defendant, without protest or dissent, gave the note in controversy and paid the balance of the consideration, then the defendant has chosen to affirm the contract, and must abide thereby, having by his own act waived the alleged fraud and deceit; and the plaintiff is entitled to recover the full amount claimed in the complaint."

In this case there is no attempt to rescind the contract. Nor

is there any ground for claiming that the defendant had discovered the fraud which was practiced upon him, when he gave the note in suit and paid the balance of the consideration.   He had, .it is true, ascertained the actual weight of the cattle. But he did not then know that the plaintiff and Ingalsbe had been guilty of deceit and fraud.   He had treated with them upon the supposition that they knew no more what the cattle. weighed than he did himself, and that what they had said to him upon that subject was an expression of mere opinion. Had this been the case, of course there would have been no fraud in the transaction, even if the cattle did not weigh as much as they represented or said they would.   It would then have been a mistake in a matter of judgment in estimating the weight of the cattle, where there would have been no fraud.

The other instruction was: "That if the jury should find. that *Birdsey* or Ingalsbe, at Green's office, at the time of the settlement for the cattle, admitted, either by direct admission or by making no reply when asked ( if they were asked ), that they had weighed the cattle in Milwaukee, and thereafter the defendant gave the note in question, and check for the balance of the money, the defendant can not sustain his claim in this action."

This settlement was had the next day after the cattle were purchased and delivered.   Whether the defendant would then have been at liberty. to decline to retain the cattle and pay for them, had he known the facts, is a question we need not determine.   It is sufficient to say that he did not know that the cattle had been weighed in Milwaukee, though his brother had a strong suspicion that this was the case.   But the defendant would not have been warranted in acting on mere suspicion. He was bound, by every principle of law and morals, to faithfully abide by his contract, unless satisfied upon sufficient grounds that the plaintiff and Ingalsbe had been guilty of fraud and deceit in inducing him to enter into it.   They did not admit in any way at that time that the cattle had been

weighed by them, and that they knew their representations in relation to their weight were false.

The court charged very pointedly, that the claim on the part of the defense involved a charge of falsehood, deceit and fraud against the plaintiff and Ingalsbe, and because this was the case strict proof was necessary to support it. The jury have found upon the evidence that this charge was established. The cause seems to have been submitted under clear and proper instructions by the court as to the law applicable to the facts; and the judgment must be affirmed.

*By the Court.* — Ordered accordingly.

The appellant moved for a rehearing; and the cause was finally disposed of at the January term, 1874.

COLE, J.   On the motion for a rehearing, two points, made in the original brief, are pressed upon our attention, as showing error in the rulings of the court on the trial : 1st, the exclusion of the question asked the witness Wm. H. Butterfield, on cross· examination, as to what the cattle were worth per head in Chicago at the time of sale; and 2d, the question arising under the statute of frauds.

In regard to the first point, we do not deem it necessary to add anything to what is said in the opinion.   Strictly speaking, the witness had not been so examined in chief as to give the plaintiff the right to ask that question on cross examination. Great latitude of interrogation is frequently allowed on cross examination ; and if the court, in its discretion, had permitted the question to be asked, and the judgment had been for the plaintiff, the ruling might not have been deemed an error for which a new trial should be granted.   But the court saw fit to exclude the testimony, and as a matter of strict right the plaintiff could not insist upon the question being answered on cross examination.

On the other point it is said, that as there was no written

memorandum of the contract, the sale was void, and that the defendant might have thrown up the treaty when he ascertained the actual weight of the cattle; and as he did not, he cannot complain of the fraud practiced upon him. The contract was made in Chicago, and what the statute of Illinois is upon the subject of this verbal contract, does not appear in the case. In the absence of proof upon the question, we must assume that the statute of that state is the same as our own; but it is quite possible, if the statute had been put in evidence, it would have shown that the verbal contract was binding, and that no writing was necessary to validate it. See R. S. Illinois, Cooke's edition, 1858, vol. 1, p. 541.

*By the Court.* — Motion for a rehearing denied