KOBITER, Appellant, vs. ALBRECHT and others, Respondents.

*March 22 — April 12, 1892.*

*Vendor and purchaser of land: Fraudulent representations as to quality: Measure of damages: Pleading: Evidence: Laches: Estoppel: Reversal of judgment: New trial.*

1. The measure of damages for fraudulent representations of the vendor as to the quality of land sold is the difference between the actual value of the land and its value had it been as represented; and in an action by the vendor to foreclose a purchase-money mortgage a counterclaim for such damages must state such values. And if, in such action, a partial failure of consideration for the note and mortgage by reason of such misrepresentations may be pleaded as a defense merely (which is doubtful), such values must be stated in the pleading.

2. In such an action the answer failed to state the value of the land had it been as represented, and the only defense pleaded was that the land was actually worth less than the defendants had paid in cash, and hence that there was a total failure of consideration for the note and mortgage. Such defense not being sustained by the proof, and there being no evidence as to the value of the land had it been as represented, the plaintiff was entitled to judgment for the whole amount unpaid on the note and mortgage.

3. The trial court, in such case, having deducted from the mortgage debt the difference between the purchase price of the land and its actual value at the time, the judgment is reversed on plaintiff's appeal; and it appearing that the evidence was insufficient to establish the alleged fraudulent representations, and that they could not be established on another trial, judgment for the plaintiff is directed without granting a retrial.

4. Unless the conduct of the party who claims to have been induced to purchase land by fraudulent representations as to its quality has been consistent throughout with such claim, but little weight should be given to the testimony of himself and his family that such representations were made, when they are denied by the party alleged to have made them.

5. In this case the testimony of the parties as to the alleged fraudulent representations was in direct conflict. The defendants had occupied the land as a farm for several years after the purchase, paying interest as it became due on the purchase-money mortgage. When

Kobiter vs. Albrecht and others.

the debt was about to become due they applied for an extension, and, that being refused, applied to other persons for a loan to pay such debt, making to them substantially the same representations as to the quality of the farm as they claim the plaintiff made. And until this action to foreclose the mortgage was commenced they made no complaint of fraud on the part of the plaintiff. *Held,* that the finding of the trial court that the fraudulent representations were made was against the clear preponderance of the evidence.

[6. Whether the delay of the defendants in asserting their claim of fraud was not such laches as would estop them to avail themselves of it as a defense or counterclaim in the action to foreclose the mortgage, not determined.]

APPEAL from the Circuit Court for *Marquette* County.

This action is to foreclose a mortgage on 326 acres of land in Marquette county, executed by defendants *Frederick* and *Sophia Albrecht* to plaintiff, to secure the payment of a promissory note made by the mortgagors to the plaintiff for $4,000, dated April 18, 1885, and payable five years from date, with interest at six per cent., payable annually. Such note and mortgage are for the unpaid balance of the purchase money for the mortgaged premises. The complaint is in the usual form of complaints in actions to foreclose mortgages. It admits payment, as the same became due, of four years' interest on the mortgage debt.

The mortgagors answered that at the time of the purchase of the mortgaged premises they resided in Chicago; that in March, 1885, an agent of the plaintiff represented to them that such premises " were first-quality farming lands, worth at least $11,000, and induced the defendant *Frederick* to go to Marquette county to view the same;" that said *Frederick* and his son, the defendant *Robert Albrecht*, went to view the land in the latter part of March, but the ground was so covered with snow that they were unable to see the quality of the land, and were compelled to rely and did rely upon plaintiff's representations in regard thereto, and so informed him; that thereupon plaintiff rep-

resented to them " that said lands were very valuable as farming lands, and the soil thereof, with the exception of forty square rods in one corner thereof, was a clay loam, and said lands were worth $35 per acre, and in the aggregate $11,000, all of which the plaintiff then and there knew to be false;" and, further, " the said plaintiff well knew at said time that said lands were not worth to exceed one half said sum, and were sandy, and for the most part of little value; that said lands in their whole extent did not contain more than thirty acres of clay loam soil, and that in scattered pieces; that one entire eighty-acre tract of said land is of light, drifting sand, covered with stones, and not fit to raise any crop whatever upon, and the remainder of said land is marsh and sand, of little value;" and that the mortgagors, relying upon such representations, purchased said lands of plaintiff for the price of $11,000, and paid him $7,000 in property and cash, and executed the note and mortgage in suit for the balance. Judgment is demanded that the complaint be dismissed, the said note and mortgage canceled and held for naught, and for costs.

The court found the fraud as alleged in the answer; also that the 326 acres of land and a large amount of personal property were sold together by plaintiff to the mortgagors for the gross sum of $10,700; and that such personal property was worth $2,122,— thus leaving the price of the land $8,578,— and that all of said property was not worth to exceed $8,000. The difference between the value of the property and the price agreed to be paid for it — $2,700 — was allowed by the court on the mortgage debt.

It appeared on the trial that the mortgagors paid the interest on the note and mortgage as the same became due, for four years. The court also allowed on the mortgage debt the interest so paid on $2,700 of such debt for the four years, being $162 per year, or $648 in all. The court gave judgment for plaintiff for $841.91, being the balance

due on the mortgage debt after deducting said $2,700 and $648, and for costs and stipulated solicitor's fees. The case is further stated in the opinion. Plaintiff appeals from the judgment.

For the appellant there was a brief by *J. H. Rogers*, attorney, and *Rubens & Mott*, of counsel, and oral argument by *Mr. Rogers*. They argued, among other things, that the defendants are estopped by their conduct from setting up fraud as a defense. Herman, Estoppel, secs. 1043–44; *Thweatt v. McLeod*, 56 Ala. 375; *Hunt v. Hardwick & Co.* 68 Ga. 103; *Lyon v. Waldo*, 36 Mich. 345; *Supervisors v. Schenck*, 5 Wall. 772; *O'Keefe v. Handy*, 31 La. Ann. 832; *Mills v. Gleason*, 11 Wis. 470; *Johnson v. Stark Co.* 24 Ill. 90; *Keithsburg v. Frick*, 34 id. 422. An answer setting up total failure of consideration is not supported by proof of partial failure. *Herman v. Gray*, 79 Wis. 182; *Lombard v. Cowham*, 34 id. 486; *Delaney v. McDonald*, 47 id. 108; *Sanborn v. Osgood*, 16 N. H. 112; *Johnson v. Titus*, 2 Hill, 606; *Goodwin v. Robinson*, 30 Ark. 535.

*Thos. Armstrong, Jr.*, and *G. W. Hazelton*, for the respondents, to the point that there was no estoppel, because the defendants did not know, prior to the commencement of this action, that they could defend against the note and mortgage, cited *Cumberland C. & I. Co. v. Sherman*, 20 Md. 117; *Whitney v. Allaire*, 4 Denio, 556; *Estell v. Myers*, 54 Miss. 174; Cooley, Torts, 505; Pomeroy, Eq. Jur. secs. 964, 965; *Odell v. Rogers*, 44 Wis. 182–3.

LYON, C. J. I. The defense set up in the answer of the mortgagors is that the plaintiff fraudulently misrepresented the quality and value of the mortgaged land, and that by reason of the misrepresentation of quality the land was not worth as much as the mortgagors paid down on their purchase, and hence that there was no consideration for the note and mortgage in suit, which were given for the unpaid

balance of the agreed price of the property. In other words, the only defense pleaded is a total failure of consideration for such note and mortgage. That defense failed, for the plaintiff recovered over $800 thereon. If a partial failure of consideration may be pleaded as a defense merely (which is doubtful), such defense is not sufficiently pleaded, for the amount of damages resulting from the alleged fraudulent representations of the quality of the land is not stated. True, the answer alleges (contrary to the findings of the court) that the purchasers agreed to pay $11,000 for the land, and paid $7,000 thereof down in property and cash, and that the land was worth not to exceed $5,500. But it does not allege the value of the land had it been as represented, which value, and not the purchase price, is the basis for computing damages for such alleged fraudulent representations. The findings are that the mortgagors agreed to pay $10,700 for the land and $2,122 worth of personal property, and that all the property was not worth to exceed $8,000. The proofs on the subject of values are no broader than the answer and findings, for they are confined to the question of the value of the land in its existing condition. No attempt was made to show what the same would have been worth had it been as represented. The legal rule of damages in a case like this is the difference in the value of the land as it was and its value had it been as represented. Neither the answer nor the proofs furnished the necessary basis for computing such damages.

After the testimony had all been put in, and near the close of the argument, the attorneys for defendants asked leave to amend their answer by inserting a counterclaim therein based upon the same facts alleged as a defense. The court denied such request. For reasons already stated, such counterclaim, in the form proposed, would have been invalid; and had it been in proper form,— that is, had it alleged, by way of recoupment, the fraudulent representa-

tions and the damages occasioned thereby,— the proofs furnish no basis for the assessment of such damages. Hence the refusal to allow the proposed amendment was not error.

Under the pleadings and proofs, as they stand in the record, the court should have given judgment for plaintiff for the whole amount unpaid on the note and mortgage. The pleadings are quite similar to those in *Herman v. Gray*, 79 Wis. 182, and much that is said in that case is applicable here. The case is authority for the rules above stated.

II. There having been a mistrial of the action, in that it was tried on insufficient pleadings, and the proofs were all directed to an inaccurate rule of damages, it may plausibly be claimed that, although the existing judgment must be reversed on plaintiff's appeal, the case should be sent back for a retrial on corrected pleadings and with reference to the correct rule of damages. There would be force in this claim were, or could, the alleged fraudulent representations be clearly proved. But there is no reason to believe the defendants can make any stronger proofs thereof on a retrial than they have already made. Hence, unless the present proofs are sufficient to entitle the mortgagors to recover damages therefor, a retrial of the action should not be awarded. We are to determine, therefore, whether the proofs are sufficient for that purpose.

The mortgagors purchased the land in April, 1885, and have resided upon and carried it on as a farm ever since. It must be conclusively presumed that, within a few months after the purchase, at the longest, they knew, or (what is the same thing) might have known had they exercised reasonable diligence, the quality of the land. Yet they paid the interest on the mortgage debt when it became due in 1886, 1887, 1888, and 1889, and, when the mortgage debt was about to become due in 1890, applied to plaintiff to extend the time of payment. The plaintiff declining to do so, they applied to different persons for a loan

with which to pay such debt, and made to such persons substantially the same representations of the quality of the farm which they now charge the plaintiff falsely made to them. It does not appear that before this action was commenced the mortgagors ever claimed to the plaintiff or any one else that they had purchased the land on the faith of plaintiff's representations of its quality and value, or that the plaintiff ever made any such representations to them. Indeed, their conduct throughout was entirely inconsistent with such claim. The only excuse they give for such conduct and for their protracted silence in a matter of such vital importance to them is the lame and inconsequential one found by the court, that "they did not know, and had not been advised, prior to the date of commencing this action, that they could defend against the payment of said note and mortgage, or could avail themselves of their defense, or of any defense, against the same." They were bound to know that the legal remedies pointed out in *Herman v. Gray*, 79 Wis. 182, were available to them, and, if not so bound, their ignorance fails to explain their silence, and the same cannot reasonably be explained on any other theory than that they had not been cheated as they now claim they were.

The testimony of the alleged fraudulent representations is conflicting. The defendants *Frederick* and *Robert Albrecht*, and another son of *Frederick*, testify that the plaintiff made the representation alleged, and the plaintiff denies that he made them. Standing alone, this testimony would probably support a finding either way. But, when the facts above stated are thrown in the scale, there should be no hesitation to hold that the alleged false representations were not proved. If, on the testimony of interested parties alone which is contradicted, a grantor of real estate can be held to respond in damages for an alleged parol misrepresentation of the quality of the land sold, first asserted years after the conveyance and after the purchaser had by his

silence or conduct or both negatived the making of such representations, there would be no safety for grantors of property. They would be at the mercy of unscrupulous parties or witnesses who choose to indulge in the safest of all perjury, by swearing, years after the alleged fact, to oral false statements of the grantor as having been made pending negotiations for the sale. Of course these remarks are not applied to the defendants or their witnesses. They are only made to exemplify the extreme peril of giving full credence to such testimony, and the absolute necessity of subjecting it to the closest scrutiny. The only safe and reasonable rule in such cases is to hold that, unless the conduct of the party who claims to have been defrauded has been throughout consistent with such claim, but little weight should be given to the testimony of himself and family that the alleged false representations were made, when the same are denied by the party alleged to have made them. Before such misrepresentations can properly be found to have been made, the proof thereof should be clear and satisfactory. As a general rule, no testimony thereof, when disputed, is or can be sufficient clearly and satisfactorily to prove the fraud, if the uniform conduct of the party alleged to have been defrauded has, as in the present case, been for years entirely inconsistent with the claim that such fraud has been committed. Our conclusion is that the finding of the existence of the fraud charged, and upon which the judgment is based, is against the clear and satisfactory preponderance of proof, and cannot be upheld.

For the above reasons, and because the defendants have had the fullest opportunity to prove the alleged false representations unembarrassed by their defective answer, and because they have manifestly introduced all the evidence they have on the subject, we think another trial on corrected pleadings should not be awarded.

In conclusion, it may be observed that the only effect

given to the conduct of the mortgagors and their delay in asserting a claim that they were the victims of the plaintiff's fraud is the effect which those matters should legitimately have as evidence bearing upon the question whether the plaintiff made such misrepresentations. This is most favorable to defendants, for such delay· is not treated as laches, working an estoppel against them to avail themselves of the alleged false representations as a defense or counterclaim in the action. Had the mortgagors brought an equitable action to procure the cancellation of the note and mortgage because of the alleged fraud, it is quite probable that their laches would have defeated the action, on the principle laid down by Judge STORY in *Gould v. Gould,* 3 Story, 516, and approved and adopted by this court in *Holden v. Meadows,* 31 Wis. 284, that "a court of equity will never entertain a bill for relief, even in cases of asserted fraud, if the plaintiff has been guilty of gross laches or unreasonable delay." Page 290. It might well be held that an effectual counterclaim herein would be the equivalent of such an action, and therefore within this rule. But we have chosen to take the more favorable view for the defendants, and to treat the supposed counterclaim as a mere recoupment of damages, and the equivalent of an action at law to recover such damages, and have given no conclusive effect to such delay, as would probably be done were such . counterclaim held to be an equitable one. We do not care to elaborate this subject. Many of the authorities bearing upon it will be found cited in 12 Am. & Eng. Ency. of Law, tit. "LACHES."

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to render judgment for the plaintiff of foreclosure for the amount due on the note and mortgage in suit by the terms thereof. At least 100 pages of testimony have been unnecessarily printed in the case. In the taxation of costs that number of pages will be deducted therefrom.