POTTER, Guardian, Appellant, vs. NECEDAH LUMBER COMPANY and others, Respondents.

105    25
111   [3]191
111   [2]194

*September 8 — December 15, 1899.*

*Court and jury: Fraudulent representations by vendee: Measure of damages: Corporations: Sale of stock: Cause of action.*

1. If different minds can reasonably come to different conclusions from the evidence, as to the rights of the parties, it should be left to the jury to draw the proper conclusion.

2. If a person, by fraudulent representation to another as to the character, amount, and future prospects of property owned by the latter, for the purpose of inducing and which causes such other to sell such property to such person at a price determined by such false representations, and the relations between the parties be such that such person owes to such other good faith in such a transaction as regards disclosing the true condition of the property, the

former may recover of the latter the damages sustained by him which are the natural and proximate consequences of the wrong.

3. In the circumstances stated in the foregoing, if the actual value of the property sold exceeds the selling price, the difference between the two, with interest in a proper case, is the measure of damages, and if the actual value be not more than the value received, the wrong is not actionable.

4. In the absence of some special circumstance locating some other standard, from which to compute damages to a wronged party by fraud in the sale of property, within the scope of the natural and proximate result of the fraud, the difference between the thing as represented and upon which the price was made, and the actual value, is the legal standard, whether the defrauded party be the vendor or the vendee.

5. When stock in a corporation is sold in good faith for less than its full value, and a certificate is issued therefor, void because issued for stock not fully paid, the consideration for such stock is not thereby lost to the certificate holder.

6. Stock in a corporation may be sold for its par value in money and services rendered to the corporation.

7. If stock in a corporation be issued to and paid for by a person in good faith, which is void because in excess of that authorized by law, the payor may reclaim the consideration paid.

8. If stockholders of a corporation all surrender a like percentage of their stock at less than its actual value, one induced to make such surrender by fraudulent representations suffers no actionable wrong.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Juneau county: A. J. VINJE, Judge. *Affirmed*.

Action to recover damages for wrongfully inducing plaintiff to part with capital stock in the *Necedah Lumber Company* belonging to her ward, for less than its fair value, the wrong consisting in purposely falsely representing the character and value of the corporate property, the facilities for properly continuing the business of the corporation, and the advisability of reducing the capital stock, for the purpose of inducing plaintiff to surrender for cancellation a part of her stock and to sell the balance for $110 per share, when the stock was worth much more than that amount, which

fraudulent purpose was accomplished, plaintiff acting in the matter in the belief that such representations were in accordance with the truth.    The facts as claimed by plaintiff were set out in the complaint with considerable particularity. Among other things it was stated that George A. Potter, plaintiff's husband, was a stockholder of the defendant corporation for many years prior to the time of the commission of the wrongs complained of; that during the time of such commission Potter was under treatment for insanity, was unable to give any attention to business matters, and was under the legal guardianship of plaintiff because of his mental condition; that in such situation plaintiff, who was entirely unacquainted with business matters, relied upon defendant *Babcock*, one of the officers of the corporation, for advice as to the handling of the Potter interest therein, and that he was conscious of that fact and consented to act as such adviser; that while the relations between *Babcock* and plaintiff were as stated, he and the other officers named as defendants conspired to obtain possession of the Potter stock at less than its true value, and, to carry out that purpose, on the 15th day of July, 1891, they secretly issued 179 shares of corporate stock, eighty shares going to *Babcock* and ninety-nine shares to John M. Burch, at $85 per share, charging up the difference between that price and the par value of the stock as a loss; that in April, 1892, in furtherance of the fraudulent scheme aforesaid, the board of directors caused a reduction of one third of the capital stock to be made at one half of its fair value, and obtained the consent of plaintiff thereto by falsely inventorying the corporate property for much less than its value, and entering the result thereof on the corporate books so as to make it appear that the reduction of stock as stated was for the best interests of the stockholders and consistent with its value; that later, in June of the same year, the defendants obtained the balance of the stock controlled by plaintiff, by inducing her

Potter vs. Necedah Lumber Co. and others.

to transfer it to the corporation at $110 per share when it was worth $200 per share, by false representations knowingly made, particularly by *Babcock*, acting on behalf of all of the defendants, upon whom she, to his knowledge, relied for proper direction as to the handling of the property, that the corporation was out of pine, that no more dividends on stock could be expected, that the corporation owned no hardwood and could obtain none with which to continue the business, that the cutting of lumber was practically ended, that the corporate lands were worthless, and that the value of the stock did not exceed $110 per share. The defendants answered the complaint, putting in issue all of the allegations thereof on the subject of fraud, and stating facts to the effect that the transactions between the defendants and the plaintiff referred to in the complaint were free from wrong, and that plaintiff obtained, at the time she surrendered and sold the Potter stock, the full value thereof. The issues formed by the pleadings were submitted to a jury on the evidence produced on the trial, resulting in a verdict of no cause of action, upon which judgment was rendered in defendants' favor, from which plaintiff appealed.

For the appellant there were briefs by *O'Connor, Hammel & Schmitz*, attorneys, and *James G. Flanders*, of counsel, and oral argument by *J. L. O'Connor* and *Mr. Flanders*.

For the respondents there was a brief by *Olin & Butler*, and oral argument by *J. M. Olin* and *H. L. Butler*.

The following opinion was filed September 26, 1899:

MARSHALL, J. As properly said by the learned counsel for appellant on the trial of this case, the two vital questions on the side of the plaintiff were, Was the plaintiff induced to sell her ward's stock by false and fraudulent representations made by the defendants, or any of them? and If so to what extent, if any, was she damaged thereby? Those two elements are still the vital questions to be considered. While

the assignments of error contained in the brief of counsel present some matters that if reached would be worthy of judicial consideration, the two matters indicated are of such controlling importance that the decision of either of them in defendants' favor would require an affirmance of the judgment, regardless of whether any or all of such assignments of error are good or not. Is there any credible evidence to warrant the jury finding in appellant's favor, that she was fraudulently induced to part with the stock as alleged in the complaint? and If so, is there any evidence from which a jury could reasonably decide that she suffered any recoverable loss thereby? Those foundation elements in appellant's case must first be considered.

It is not deemed advisable to go into any lengthy discussion of the first proposition. It is sufficient to say that the long record, containing some 400 printed pages, has been examined with the result that the contention that there is no evidence to go to the jury on the subject of fraud cannot be sustained. In one view of the evidence there was nothing shown amounting to fraud in law, the evidence being susceptible of reconciliation with the theory that at most there was only a want of that friendly and unselfish regard in business affairs necessary to satisfy the standard of morals in such affairs between the strong and capable and the weak and dependent who have been drawn into close business and social relations in a common interest, by which men ordinarily are tested in the sphere of life occupied by the parties concerned; and even on that question probably fair men might reasonably differ. In another view there is some proof of the wrong alleged, met, it is true, by much evidence on the part of defendants, and on the whole evidence bearing on the question the jury found a verdict for them. Whether that conclusion was reached on the ground that no fraud was established or because no damage was shown to have been suffered by plaintiff, or because neither fraud

nor loss was satisfactorily established by the evidence, is not material to the disposition of this appeal, as it must be said that there was room for different minds to come to different conclusions on the question of fraud, and therefore it was necessarily submitted to a jury, and their finding cannot be disturbed because contrary to the evidence.

Appellant's second contention brings up for consideration the question of what was the proper measure of damages applicable to the case upon the most favorable view that can be taken of it for appellant. It is conceded that in case of a defrauded vendee the correct rule is the difference between the value of the thing as represented and the actual value. That differs from the rule in some jurisdictions, but is in accordance with the great weight of authority and has been too long the law of this state, as administered by the courts, to admit of discussion as to whether it is right in principle or not. *Birdsey v. Butterfield,* 34 Wis. 52; *Kobiter v. Albrecht,* 82 Wis. 58; *Warner v. Benjamin,* 89 Wis. 290. Appellant claims that the reason of that rule, applied to a case where a vendor is induced by fraudulent representations of his vendee as to the real value of the property forming the subject of the transaction to part with it at a price determined on such representations, entitles him to recover the difference between the selling price, taking that as the actual value of the property as represented, and the true value computed on that basis. No judicial authority is produced to support such contention and we have been unable to discover any. *Kilgore v. Bruce,* 166 Mass. 136, is referred to by appellant, but we fail to see its application to this case. There the purchaser was induced by fraudulent representations to pay more for the property than the seller would otherwise have parted with it for to his vendee; but the fact that he would, had the fraudulent representations not been made, have purchased the property at a more favorable price, was established by positive evidence and found by the jury,

which circumstance was said by the court to take the case out of the general rule.

The foundation principle upon which all rules for determining damages in a case of actionable fraud rests, is that the wronged party is to be compensated for the loss he sustained by the fraud to the extent of the natural and proximate consequences of the wrong,— for such results ' as happen in the natural course of things and were to be expected to ensue according to the general experience of mankind.' Sutherland, Dam. § 1163; *Crater v. Binninger*, 33 N. J. Law, 513. What is to be considered proximate and what remote under the rule stated has led to much confusion in the books, and it would be idle to try to harmonize the various holdings on the subject. The difficulty has been that a mere application of the foundation principle indicated has been stated as the rule in one jurisdiction, and a different application of the principle as the rule in another. It is useless to spend time to give illustrations to demonstrate what is here said, for the situation is familiar to the profession.

In the absence of some special circumstance, as in the Massachusetts case, to establish some exceptional standard from which to measure the damages suffered by the defrauded party in the sale of property, as within the scope of the natural and proximate results of the fraud, whether such defrauded party be the vendor or the vendee, it is difficult to see how any other standard can be adopted than that of the actual value of the thing falsely represented, without going into the realms of speculation and conjecture. The cases found in the books where defrauded vendors have sought compensation for their wrongs are few in number, as the failure of the able counsel on both sides of this case to produce authority on the subject amply demonstrates, and as is further demonstrated by the failure here in the same field. Nowhere has the rule contended for by appel-

lant's counsel been adopted. The rule of difference between the value as represented and the actual value is not universal. In many jurisdictions, as conceded by counsel, a less rigorous rule prevails. It can only be defended on the theory that both values are determinable to a reasonable certainty and that the difference between them is attributable to the natural and proximate result of the fraud. When we try to determine the actual value of property, taking as the standard to measure from some fictitious value, it would seem that we at once begin to wander beyond the realms of natural and proximate result and to establish a new rule difficult of application and not necessary or practical in the administration of justice.

The result is, we hold the general rule applies, that, where an actionable fraud is committed by false representations to effect the sale of property, the damages to the wronged party, whether he be the vendor or vendee, are limited to the difference between the real value of the subject of the sale at the time of such sale and what the value would have been had the representations been true, with interest in a proper case. We venture the assertion that such will be found to be the rule applied generally in cases brought by defrauded vendors for compensation for their loss. *Burns v. Mahannah*, 39 Kan. 87; *Bench v. Sheldon*, 14 Barb. 66. Notwithstanding the dearth of authority applicable to the particular situation before us, when we keep in mind the principle upon which all rules for damages must be based, the reason why the general rule stated should apply to vendors as well as vendees seems plain.

We do not understand that appellant's counsel contend that any damage was shown in regard to sale of the stock,— except on the theory that the actual value of the corporate property for the purposes of this case is to be taken as that which would have made the stock worth $110 per share had

such property been as represented, plus an amount sufficient to measure the other elements of value of the corporate property which in fact existed,— that is, unless the court takes a fictitious instead of the actual value as a standard to measure from, thereby giving to plaintiff compensation for something that she did not have, therefore could not have been defrauded out of. The record appears to be barren of evidence to support any theory that the property was actually worth more than was measured by the stock of the corporation at the price plaintiff obtained for it. On the trial it clearly appeared affirmatively, as respondents' counsel contend, that the book value of the stock, made up in accordance with the inventory of the property at its fair value, was somewhat less than what plaintiff obtained. So the situation is that if she was induced to part with her stock as alleged, she received its full value and suffered no pecuniary loss from the transaction, therefore has no legal ground for complaint. Pecuniary loss is the test of actionable fraud when damages are sought, and that must be so without reference to whether the vendor or vendee is the defrauded party. Lost profits come within that rule when there is a definite standard from which to determine such profits (*Bergeron v. Miles*, 88 Wis. 397; *Shepard v. Milwaukee G. L. Co.* 15 Wis. 318; *Shadbolt & B. I. Co. v. Topliff*, 85 Wis. 513; *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214), but otherwise they are regarded as too remote.

Two transactions other than the sale of the stock heretofore mentioned are instanced as having been fraudulent and to plaintiff's injury. One is the issue of 179 shares of stock for eighty-five per cent. of its par value, the difference being charged up as a loss; and the other is the transaction of inducing plaintiff to surrender at par a percentage of her stock on the same basis with all other stockholders. No good ground is perceived to claim that plaint-

iff suffered pecuniary loss by either of such transactions. There is no dispute in the evidence but that the issue of the 179 shares of stock was made in good faith, and that whatever element of value there was in the stock in excess of what the corporation received was considered at the time to be counted as compensation for necessary services to be rendered to the corporation by those who received the stock. The recipients of that stock were necessary employees of the corporation, and in order to retain their services they were given the opportunity to take the stock at eighty-five per cent. of its par value. Whether the issue of the stock was strictly legal or not is not the question here, but whether plaintiff was injured by it, and on that there is a failure of proof. If the certificates of stock were void, as confidently urged, it would not follow that the money paid for the stock belonged to the corporation for the benefit of the other stockholders, and the stock was lost by the certificate holders, but on the contrary the stock belonged to such holders just the same, unless it constituted an illegal increase of stock, in which case the consideration paid for it was recoverable by the payees, since there was nothing to impeach the good faith of the transaction.

In regard to the surrender and cancellation of stock, it is sufficient to mention that all the stockholders of the corporation surrendered stock for cancellation in the same proportion as did the plaintiff. Therefore if the stock was actually worth more than the amount received by the stockholders, the difference remained in the corporation for the benefit of all the stockholders.

As before indicated, we are unable to discover any basis in the evidence for a legal claim for pecuniary loss to the plaintiff; the judgment must be affirmed irrespective of the assignments of error called to our attention which have not been discussed.

*By the Court.*— The judgment is affirmed.

The following opinion was filed December 15, 1899:

MARSHALL, J.   The appellant's counsel insists, as a ground
for a rehearing, that the court, in deciding the case, adopted
their theory as to the proper rule of damages but failed to
give effect to it.   True, the court held, and now affirms,
that where actionable fraud is committed by false represen-
tations to effect the sale of property, whether the wronged
party be the vendee or vendor, recoverable loss is limited
to the difference between the real value of the subject of
the sale at the time of such sale and what the property
would have been worth had the representations been true,
with interest in a proper case.   But it was said in the same
connection, and the learned counsel must have observed it
if they read the opinion with the care that should be ob-
served before applying for a rehearing, that such rule must
always be applied in the light of the familiar principle
upon which all rules for measuring recoverable damages are
based, that only loss caused to the deceived party as the
natural and proximate consequence of the deceit, is to be
compensated for.   So, where a sale price is fixed and paid
on a represented situation and character of the subject of
the sale, which is a full equivalent therefor, but in excess of
what the property would be worth were it in fact as repre-
sented, the seller suffers no loss, therefore neither the rule
mentioned, nor any other for measuring recoverable loss,
can be invoked in his favor.   In the case of a deceived
vendee, in that the property is worth more than it would
be if its character and quality were as represented, and upon
which the sale price was made, it would hardly be claimed
that, notwithstanding the beneficial character of the bar-
gain to him, the rule would still apply that he is entitled to
recover the difference between the value of the thing as
represented and the actual value.   That would be exceed-
ingly absurd, as will be freely admitted upon a moment's

consideration. It is an absolute essential to the application of the rule that the deceit shall result in loss to the deceived party, and that is so whether such party be vendee or vendor. If the difference between the two values represent a gain to the alleged defrauded party, instead of a loss, clearly, there is no room for the application of any rule of damages upon which a recovery can rest. Counsel for appellant do not distinguish between a difference in represented and actual value in favor of a party and a difference against him. They seek to apply the rule designed to measure loss, regardless of whether there is any loss or not.

It is said that a second claim made by appellant's counsel as to the rule of damages was overlooked. At this point again counsel seem to have overlooked the elementary principle to which reference was made in the opinion, that no matter what the deception, if it does not result in loss to the alleged wronged party, and as the natural and proximate result of the deception, such party is not in any position to invoke any rule of damages against the alleged wrongdoer. The court having pointed out in the decision that appellant was so circumstanced, there was no need for considering the counsel's suggestions in regard to each of the two rules of damages mentioned by them. What would be the proper rule for measuring recoverable loss, if there were any, having been stated, and a conclusion reached that plaintiff had failed to show a cause of action within the rule, there was no need for discussing counsel's "alternative theory," so called.

The foregoing covers all the suggestions made in support of the motion for rehearing.

*By the Court.*— The motion is denied.