HARWEGER and another, Appellants, v. WILCOX and another, Respondents.

*April 6—May 1, 1962.*

For the appellants there was a brief and oral argument by *Frederick F. Hillyer* of Madison.

For the respondents there was a brief by *Oldenburg, Manzer & Engel* of Madison, and oral argument by *H. Maxwell Manzer.*

DIETERICH, J. Defendants-respondents were the owners of a farm located in Dane county. About February 16, 1959, they listed the farm for sale with H. E. Gilbert, a real-estate broker, and signed a listing contract with Mr. Gilbert, which contract described the farm as:

"Acres tillable—80 up & 35 marsh, . . . Acres timber 3 Oak Grove, balance of acreage—marsh and pasture."

Mr. Gilbert prepared a brochure, advertising the farm and a part of the brochure stated:

"The farm itself consists of 138 acres. There is 80 acres of good upland soil—brown silt, technically called Miami; there is about 35 acres of good bottomland that has been adequately drained; there is a 3-acre oak grove, and the rest of it is in lowland and pasture."

A copy of the brochure was mailed to plaintiffs who lived in Central Illinois. During the month of February, 1959, plaintiffs visited the farm twice accompanied by Mr. Arthur Smith, one of Mr. Gilbert's salesmen. Due to the depth of snow on the ground they were unable to walk around the farm. Plaintiffs relied on the representations made as to the number of tillable acres in the farm and in March, 1959, purchased it for $36,000.

After moving on the farm, plaintiffs ascertained that there were only about 62 acres of tillable upland and from seven to 15 acres of tillable bottomland; and that the entire area of the farm inclosed within what plaintiffs assumed to be the boundary fences was only 116 acres.

Plaintiffs commenced an action setting forth two causes of action: (1) An action for damages based on fraudulent misrepresentation; and (2) an equitable action for rescission

based on mutual mistake as to the total number of acres in the farm.

During the trial both parties offered expert testimony as to the actual value of the farm. On behalf of the plaintiffs, Mr. Robert Smith testified in substance as follows: That he had been in the appraising business for about twenty-eight years. In the years 1958 and 1959, he was employed by the town of Pleasant Springs to make reassessment appraisal of all of the real estate in the township; and pursuant to such employment he examined and made an appraisal of the Harweger-Wilcox farm.

On May 21 and 22, 1961, he made another appraisal of the Harweger farm. He walked over a good portion of the farm, he examined the farm carefully, the buildings and soil, and referred to comparable sales in the area. He calculated a total of 62 acres of work land. The combined value of the land and buildings rounded off to $19,000, which in his opinion was the fair market value of the farm in 1959.

On cross-examination this witness was asked his opinion of the value of the farm if it had been as represented. Objection was made on the grounds that that matter had not been covered on direct examination and the objection was sustained on that ground.

Mr. Arthur Smith testified for the defendants in substance as follows: (He was the salesman for Mr. Gilbert who conducted the negotiations for the sale of the farm.) That he had been on the Harweger farm four or five times, twice when the deal was made and a couple of times after that. He made a detailed inspection of the buildings, but did not measure them, that is the only farm in the town of Pleasant Springs that he had sold and he was not aware of any comparable sales in the town of Pleasant Springs.

As far as he knew, the farm had 80 acres of good upland soil and 35 acres of good bottomland, and in 1959, was

worth $36,000. The farm as represented was worth $36,000, and if it had only the number of acres of plowland, as testified to by Mr. Robert Smith, it would have been worth approximately that.

In his opinion the fact that the farm was located near Madison had a great deal to do with its value. He also considered Mr. Wilcox's testimony as to a gross income of $12,000 for 1959 a substantial factor. He calculated that the cost of operation is equal to about one half the gross income or $6,000 which would mean a return of approximately 11 percent on the investment. He testified that the national average for the year previous to the trial was three and one-half percent on farmland.

It is relevant that Mr. Wilcox also testified that his gross profits for 1958 were only some $7,400 and that on his income-tax returns for the years 1957 and 1958, he claimed net losses of $1,169.58 and $2,760.43, respectively.

The relevant issues on this appeal are: (1) Whether the trial court could extend time to decide motions after verdict on its own motion; (2) whether the trial court's refusal to allow cross-examination of the expert witness as to the value of the farm as represented was error; and (3) damages.

### Extension of Time on Trial Court's Own Motion.

Respondents rely on the case of *Beck v. Wallmow* (1938), 226 Wis. 652, 277 N. W. 705, to sustain their position that sec. 270.49 (1), Stats., grants the trial court discretion to enter an order extending the time for cause on its own motion.

It is appellants' position that the holding of the *Beck Case* was overruled by *Boyle v. Larzelere* (1944), 245 Wis. 152, 13 N. W. (2d) 528, which case stands for the proposition according to the appellants, that the matter of enlarg-

ing time came under the provisions of sec. 269.45, a statute of general application, except as limited as to time for making the order under sec. 270.49.

The *Boyle Case* however does not overrule *Beck v. Wallmow, supra.* *Boyle* holds that the court cannot extend the time after the period (within sixty days after rendition of verdict) has run since sec. 270.49, Stats., controls over sec. 269.45 in this respect. 33 W. S. A., p. 121, sec. 270.49.

In the instant case the court granted an extension of time on its own motion within sixty days after rendition of verdict when the court learned that the defendants' brief, though filed with the court, had not been served upon plaintiffs. This court in *Kamuchey v. Trzesniewski* (1959), 8 Wis. (2d) 94, 98 N. W. (2d) 403, said trial courts should as a matter of practice require that any briefs submitted to the court be served upon opposing counsel. *Beck v. Wallmow, supra,* states (p. 657):

"The statute [sec. 270.49 (1)] is clear and unambiguous. The trial judge may, on his own motion for cause, enter an order extending the time in which to decide the motion. In the administration of justice many situations will arise which properly may be considered causes for extending the time for hearing and deciding motions after verdict. It is clearly within the power of a trial judge to act in such situations."

The requirements of sec. 269.45, Stats., do not apply to granting an extension of time under sec. 270.49 (1). The power conferred by sec. 269.45 is highly discretionary with regard to granting an extension of time, and the court's action in granting an extension of time under sec. 270.49 (1) is also highly discretionary. Such determination by the trial court will not be disturbed except in cases where it clearly appears that it has been abused. See *Syver v. Hahn* (1958), 4 Wis. (2d) 468, 90 N. W. (2d) 632; *Miller v. Belanger* (1957), 275 Wis. 187, 81 N. W. (2d) 545;

and *Banking Comm. v. Flanagan* (1940), 233 Wis. 405, 289 N. W. 647. We determine that the record fails to disclose an abuse of discretion.

### Cross-examination.

The value of the farm as represented was relevant evidence. The purpose of the expert testimony was to determine what the value of the farm actually was. The trial court was correct in ruling that it had committed prejudicial error when it refused to allow cross-examination of plaintiffs' expert as to that subject.[1]

In 2 Jones, Evidence (5th ed.), p. 831, sec. 437, the author states:

"CROSS-EXAMINATION OF EXPERT WITNESSES.—. . . Great latitude is ordinarily the rule in the cross-examination of such witnesses. The party cross-examining an expert witness is not confined to the theory on which the adversary has conducted his examination; he may go into details, and may put the case before the expert in all its phases.

"The witness may be requested to answer hypothetical questions which present the facts claimed to constitute the case or the defense of the party examining him; and the hypothetical questions may, subject to the reasonable discretion of the court, assume any facts that are relevant to the case and of which there is evidence."

### Damages.

The evidence relating to damages in the instant case consisted of testimony by the expert on behalf of the defendants that the actual value and the value of the farm as represented were each $36,000. The expert called by the plaintiffs testified only as to the actual value of the farm, which he said was $19,000.

Under the benefit-of-bargain rule the evidence was not sufficient to support a verdict where the plaintiffs' expert

---

[1] *Birdsey v. Butterfield* (1874), 34 Wis. 52, 62, contra.

witness was not permitted on cross-examination to testify as to what the value of the farm was as represented.[2] The trial court correctly stated that Wisconsin is committed to the benefit-of-bargain rule.[3] However, in fraud cases evidence relating to out-of-pocket damages should be admitted as relevant.

The evidence in the instant action would have been sufficient to sustain the verdict as to damages had the defendants been permitted to cross-examine the plaintiffs' expert witness as to the value of the farm if it had been as represented. The findings and order of the trial court for a new trial limited to the issue on damages are affirmed.

*By the Court.*—Order affirmed.

HALLOWS, J. (*dissenting*). The defrauded plaintiff should have the option of recovering either under the "benefit-of-bargain" rule or the "out-of-pocket" rule. In fraud cases, the purpose is to wholly indemnify the injured party. In most of the cases, if not all, recovery under the "benefit-of-bargain" rule exceeds what would be recovered under the "out-of-pocket" rule. However, in this case it is quite apparent the "benefit-of-bargain" rule is no bargain, and the plaintiff will recover less than the difference between the

---

[2] *Neas v. Siemens* (1960), 10 Wis. (2d) 47, 102 N. W. (2d) 259, holds that the price paid by the purchaser is relevant evidence on the issue of the value of the property if it had been as represented.

[3] *Kilkelly v. Martin* (1874), 34 Wis. 525; *Kobiter v. Albrecht* (1892), 82 Wis. 58, 51 N. W. 1124; *Warner v. Benjamin* (1895), 89 Wis. 290, 62 N. W. 179; *Potter v. Necedah Lumber Co.* (1899), 105 Wis. 25, 80 N. W. 88, 81 N. W. 118; *Ohrmundt v. Spiegelhoff* (1921), 175 Wis. 214, 184 N. W. 692; *Luedke v. Pauly Motor Truck Co.* (1924), 182 Wis. 346, 195 N. W. 853; *Mueller v. Michels* (1924), 184 Wis. 324, 197 N. W. 201, 199 N. W. 380; *Kimball v. Antigo Bldg. Supply Co.* (1952), 261 Wis. 619, 53 N. W. (2d) 701; *Anderson v. Tri-State Home Improvement Co.* (1955), 268 Wis. 455, 67 N. W. (2d) 853, 68 N. W. (2d) 705; *Neas v. Siemens* (1960), 10 Wis. (2d) 47, 102 N. W. (2d) 259.

actual value and the amount he paid for the farm. The result, therefore, is to allow the defendant to keep a benefit from his own wrong, *i.e.,* the difference between the value of the farm as represented and the higher sale price. This is inequitable and unjust.

The two rules have been exhaustively analyzed in *Selman v. Shirley* (1939), 161 Or. 582, 85 Pac. (2d) 384, 91 Pac. (2d) 312, 124 A. L. R. 1, Anno. p. *37 et seq.,* in which the court came to the conclusion that neither of the rules should be applied inflexibly. Prosser, Law of Torts (2d ed.), pp. 568, 570, sec. 91, states this decision has given more-careful consideration to the problem than any other and is beginning to be followed in other jurisdictions. In the case at bar, to limit recovery by applying the "benefit-of-bargain" rule in favor of the defrauding party rather than in favor of the defrauded party for whose benefit the rule exists, allows the retention of a bargain by the defrauding party.

I am authorized to state that Mr. Justice FAIRCHILD concurs in this dissent.