Scholtz, Respondent, vs. Kerschensteiner and another, Appellants.

*October 11—November 8, 1927.*

*Fraud: Misrepresentations as to intention of borrower: Creditor surrendering claim and accepting securities of debtor: Measure of damages: Complaint: Construction: Cause of action intended by pleader to govern.*

1. A complaint for damages for inducing plaintiff to surrender a matured claim against a foreign corporation and to accept in lieu of his claim secured notes of the corporation, alleging a representation that a chattel mortgage on the property of the corporation would be paid off and its secured notes thus made a first mortgage against the property, though containing no express allegation of an intention to so act, contained sufficient facts and circumstances from which it could be

Scholtz v. Kerschensteiner, 194 Wis. 92.

logically inferred that defendants never intended to discharge the chattel mortgage, and stated a cause of action for fraud. p. 98.

2. In such an action plaintiff would be entitled to recover the amount of damages proved, which would consist of the difference between the amount to be realized on the notes and what plaintiff would have realized if the representations had been true, it being presumed that plaintiff sustained some damage. p. 99.

3. Where the allegations of the complaint showed that it was plaintiff's intention to allege a cause of action based on fraud alone, the supreme court will not search for other possible causes of action, as a pleader must stand by the cause of action he clearly intended to express. p. 100.

APPEAL from an order of the county court of Chippewa county: T. J. CONNOR, Judge. *Affirmed.*

This is an appeal by the defendants from an order in plaintiff's favor overruling a general demurrer interposed by the defendants to the plaintiff's complaint.

The complaint alleges, in substance, that the Chippewa Valley Sheep Company is a foreign corporation, doing business in Chippewa county, Wisconsin; that it is the owner of lands in Chippewa county consisting of 10,700 acres, used for the purpose of grazing. sheep and other live stock; that the plaintiff for some considerable time prior to March 1, 1921, was the company's superintendent of its sheep ranch; that on the date last mentioned the plaintiff had a·valid and subsisting claim against the company in the sum of $6,500, and that the company at that time and subsequent thereto was in financial difficulties and unable to meet its obligations promptly and when due; that the real estate of the company was incumbered by a mortgage in the sum of $125,000 to secure notes of the company of a like amount; that the personal property was incumbered by a chattel mortgage to the Investors Finance Corporation in the sum of $20,000 to secure notes of the Finance Corporation for a like amount; that on said last named date the company further executed to the

defendants, as trustees, convertible refunding eight per cent. notes in the sum of $60,000 payable in one year, which notes were secured by a deed of trust to the defendants on the real estate and personal property of the company and the deposit of seven per cent. preferred stock of the company in an amount equal to the face value of said $60,000 of notes. Here follow further allegations of the complaint, verbatim:

"That subsequent to the execution and delivery of said notes by the Chippewa Valley Sheep Company to the said O. J. Kerschensteiner and Frank J. Edwards as trustees, to wit, on or about the 13th day of July, 1921, the defendants, O. J. Kerschensteiner and Frank J. Edwards, by false and fraudulent misrepresentations induced the plaintiff, C. W. Scholtz, to accept $6,500 of said convertible refunding eight per cent. notes of the Chippewa Valley Sheep Company in settlement of the indebtedness of said company to him; that said false and fraudulent misrepresentations consisted of the following statement made by the defendants, O. J. Kerschensteiner and Frank J. Edwards, to the plaintiff, to wit: the said defendants stated that a sufficient quantity of said convertible refunding eight per cent. notes of the Chippewa Valley Sheep Company had been sold by the defendants to pay off and discharge in full the chattel mortgage and notes secured thereby of the Chippewa Valley Sheep Company to the Investors Finance Corporation hereinbefore mentioned, and that the funds so realized from the sale of said notes were to be applied by said defendants in discharge of said chattel mortgage and notes secured thereby for the sum of $20,000; that certain convertible refunding eight per cent. notes of the Chippewa Valley Sheep Company, to wit: [here follows the numbers and amounts of the notes aggregating $6,500] were then assigned by the said defendants as trustees to the plaintiff, C. W. Scholtz, and that these said refunding notes of the plaintiff, together with other notes of the same series and issue sold by the defendants as trustees to other persons whose names are unknown to the plaintiff, would become, upon the completion of the clerical work of paying said $20,000 worth of notes to the Investors Finance Corporation, a first-mortgage lien

upon all of the personal property owned by the Chippewa Valley Sheep Company; that the defendants at the same time exhibited to the plaintiff a purported agreement for the purchase of said $20,000 worth of certain convertible refunding eight per cent. notes, which purported agreement was said to have been signed by certain directors of the Chippewa Valley Sheep Company, to wit: [here follow the names of six of the directors of the company], and which purported agreement further contained the statement that the purpose of the purchase by them of said notes was to discharge the obligations of the Chippewa Valley Sheep Company to the Investors Finance Corporation. . . ."

Then follows an allegation alleging reliance on the part of the plaintiff upon the representations so made and the acceptance by the plaintiff of the notes hereinbefore referred to, in payment of his claim against the Chippewa Valley Sheep Company. Further, the complaint alleges the falsity of the representations thus made; also that in the fall of the year 1921 the company had sold $12,000 of these refunding eight per cent. notes for cash, but refused and failed to apply the proceeds towards the payment of the notes secured by the chattel mortgage, and that the $12,000 was used in the payment of the current obligations of the company, with the knowledge and consent of the defendants. The complaint prays for damages against the defendants in the sum of $6,500.

To this complaint the defendants interposed a general demurrer, which was overruled by the court, and from the order overruling the demurrer defendants have prosecuted this appeal.

For the appellants there was a brief by *G. Carl Kuelthau* of Milwaukee, attorney, and *Dayton E. Cook* of Chippewa Falls, of counsel, and oral argument by *Mr. Cook*.

For the respondent there was a brief by *Larrabee & Larrabee* of Chippewa Falls, and oral argument by *Orrin H. Larrabee*.

DOERFLER, J.    Defendants' counsel first argue that the alleged false representations were partly as to existing facts and referred partly to the future; that the alleged representations referring to the future constituted a mere promise, and that a promise cannot constitute a false representation upon which plaintiff has a right to rely, and is therefore not in law the basis for an action grounded on fraud.

At the time when the alleged representations were made, the plaintiff had a lawful subsisting claim against the company in the sum of $6,500, which was due, upon which he was entitled to a judgment, and which judgment he could have enforced against the company by proper legal proceedings, provided there existed assets of the company available out of which the judgment could have been satisfied in whole or in part.    True, the complaint alleges specifically that the company was financially involved, and that it was unable to pay its obligations promptly when due.    General facts are also alleged, strongly indicating that the company was practically insolvent.    Whether or not, under the conditions existing as alleged, plaintiff could have realized anything on his claim, is, to say the least, problematical.    Whether the commencement of an action by the plaintiff on his unsecured claim against the company would have resulted in bankruptcy or in the appointment of a receiver is likewise problematical.    The business of the company was conducted on a large and extensive scale, and it possessed valuable assets, all of which, however, were highly incumbered.    We know that it is the tendency of owners of business enterprises, even though they be financially embarrassed, to continue their operations as long as possible, with the object in view of attaining ultimate success in the discharge of liabilities, and particularly such liabilities as are of an immediate pressing nature.    This hope, at least, it can be said is one that the plaintiff could cling to, although in reality it might be a mere fancy or conjecture.

Scholtz v. Kerschensteiner, 194 Wis. 92.

The company evidently manifested an intention to so finance its business as to enable it to weather the storm. For this purpose, evidently, it executed its second mortgage to secure $60,000 of convertible eight per cent. refunding notes.   The execution of this mortgage would logically tend to corroborate and fortify any hope which the plaintiff entertained that the company would avail itself of every possible opportunity to continue in business and to work out a successful solution of its problems.

This presents the picture, in real form, of the actual situation that confronted the plaintiff in July, 1921, when the alleged fraudulent representations of the defendants herein were said to have been made.   Upon the truth of these representations the plaintiff relied, and he surrendered his claim against the company for $6,500 which was due and payable, and accepted the notes of the company, secured as alleged, payable in one year after March 1, 1921.   He thus parted with his right to pursue his cause of action upon his claim forthwith, and accepted an obligation the payment of which was deferred for a period of about one year.

What, under the facts alleged in the complaint, constituted the principal inducement which actuated the plaintiff to accept this security and surrender his claim?   Unquestionably it was the prospect that the proceeds derived from the sale of $20,000 of the eight per cent. secured notes would be used to satisfy and discharge the chattel mortgage of the Investors Finance Corporation upon the personal property, which, if discharged, would advance the security of the eight per cent. note holders from a second mortgage to a first mortgage.   While the personal property was mortgaged to the extent of $20,000, there is no allegation in the complaint respecting the true or proximate value of such property. It is merely alleged that some time after the plaintiff entered into his agreement with the defendants the chattel mortgage was foreclosed, and that a sum was realized which was insuf-

ficient to pay in full the amount of the chattel mortgage. But whether the value of the personal property be deemed large or small, upon the payment of the chattel mortgage the holders of the eight per cent. notes, of which the plaintiff owned $6,500 worth, would be entitled to share ratably in the personal property.

It was held out to the plaintiff before he surrendered his claim that $20,000 of these eight per cent. notes had been sold and that the money was on hand and ready to be used to pay the chattel mortgage. In order to lull the plaintiff into a feeling of security there was presented to him a purported agreement, signed by six directors of the company, by which they ostensibly *had agreed* to purchase $20,000 worth of these notes for the express purpose of paying off the chattel mortgage. In fact, none of these notes had been sold in July, 1921. No agreement existed with the directors, as was represented. The entire scheme was grounded upon falsehood and deception. If the representations had been true, they would have manifested a present ability to discharge the chattel mortgage. Furthermore, some time in November, 1921, as appears from the allegations, $12,000 of these eight per cent. notes had been actually sold and realized on, and instead of applying the proceeds to the discharge in part of the chattel mortgage the money was used to pay current obligations of the company's business.

If the complaint contained an allegation stating the alleged representations both as to past and present facts and as to the future, and, in addition thereto, an express allegation that at the time of the making of the false representations it was not the intention and that it never had been the intention of the defendants to discharge this chattel mortgage, a cause of action would have been clearly alleged in the complaint, grounded upon fraud. See 12 Ruling Case Law, p. 268, § 34, and numerous cases there cited. We are satisfied that while the complaint contained no express allegation on the subject of intention, the facts and circum-

stances alleged in the complaint are so strong and of such a nature that it must be logically inferred therefrom that the defendants never had the intention of discharging this chattel mortgage.

In 12 Ruling Case Law, p. 257, § 23, it is said:

"If the promise is accompanied with statements of existing facts which show the ability of the promisor to perform his promise, and without which the promise would not be accepted or acted upon, such statements are denominated representations, and if falsely made are grounds of avoiding the contract, though the thing promised to be done lies wholly in the future."

In support of this proposition the text cites the case of *Russ L. & M. Co. v. Muscupiabe L. & W. Co.* 120 Cal. 521, 52 Pac. 995, 65 Am. St. Rep. 186.

It is true the pleading in the *Russ Lumber & Mill Company Case* also contained an allegation that at the time the alleged false representations were made there was no intention on the part of the alleged obligor to comply with the terms thereof. The language contained in the quotation from Ruling Case Law is substantially taken from the California case, and we think it states the correct principle of law. But we are further fortified in our position, as was the California court, by the allegations in the complaint from which a logical inference follows that it was never the intention of the defendants to carry out their agreement. See, also, notes in 26 Corp. Jur. pp. 1094 and 1095.

Defendants' counsel also allege that it appears from the complaint that the plaintiff under no circumstances can sustain damages. What has heretofore been said constitutes our position upon this branch of the case. Being deprived of his security upon the personal property, the plaintiff is entitled to the amount of damages he may be able to prove. The presumption under the facts is that he sustained some damage. His damage would consist of the difference between what he will now realize and what he would have

realized if the representations had been true.    The amount of recovery will depend entirely upon the damages proved. *Kobiter v. Albrecht,* 82 Wis. 58, 51 N. W. 1124.

The plaintiff strenuously argues that if the complaint does not state a cause of action based on fraud, it contains one on contract and also one for damages for violation of a fiduciary relationship.    We have given the allegations in this complaint very careful study, and we are convinced that it was the pleader's intention to allege a cause of action based on fraud, and on that ground only.    Where such intention is made clear and manifest, we will not search for other possible causes of action.    While pleadings under the Code must be liberally construed, they cannot be so loosely drafted as to make them a mere hit-or-miss proposition.    A good pleading is just as desirable at the present day as it was under the old common-law system of pleading, and a pleader cannot blow hot one moment and cold another.    He must stand by the cause of action he clearly intended to express.

*By the Court.*—The order of the lower court is affirmed.

ESCHWEILER, J., dissents.