OLLERMAN, Plaintiff-Respondent, v. O'ROURKE COMPANY, INC., Defendant-Appellant.

Supreme Court

*No. 77–305. Submitted on briefs November 7, 1979.—*
*Decided February 7, 1980.*
(Also reported in 288 N.W.2d 95.)

18

For the appellant the cause was submitted on the briefs of *Frank J. Daily* and *Quarles & Brady* of Milwaukee.

For the respondent the cause was submitted on the brief of *James L. Walt,* attorney, and *Alan L. Derzon,* of counsel, both of Milwaukee.

SHIRLEY S. ABRAHAMSON, J. This appeal is from an order overruling the motion of O'Rourke Co., Inc., the seller, brought under sec. 802.06(2)(f), Stats.,[1] to dismiss Roy Ollerman's, the buyer's, amended complaint for failing to state a claim upon which relief can be granted. We conclude that the complaint states a claim, and we affirm the order of the circuit court.

## I.

Because this is an appeal from an order overruling a motion to dismiss the amended complaint,[2] the only facts of record are those in the pleadings.

---

[1] Sec. 802.06(2), Stats., provides:

"Every defense, in law or fact, except the defense of improper venue, to a claim for relief in any pleading, . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (f) failure to state a claim upon which relief can be granted, . . . . A motion making any of these defenses shall be made before pleading if a further pleading is permitted."

Under sec. 817.33(3)(e), Stats. 1975, a circuit court's order overruling a motion to dismiss under sec. 802.06(2) is an appealable order.

[2] We sustained the seller's demurrer to the original complaint because the complaint did not sufficiently allege that the seller

In his amended complaint, filed on July 25, 1977, the buyer alleges that on or about May 15, 1974 he entered into a written offer to purchase a vacant lot in the Village of Brown Deer, Milwaukee county, Wisconsin, for an agreed price of $12,600; that on or about June 4, 1974, the seller conveyed the lot to the buyer by a warranty deed; that the buyer purchased the lot to build a house; and that in the process of excavating for the house, a well on the property was uncapped and water was released.

The complaint further alleges that the seller is a corporation engaged in the business of developing and selling real estate; that it is experienced in matters of real estate; that it had owned and subdivided the area of real estate in which the subject lot is located; that it was offering the subject lot and other lots in the same area for public sale; that it is familiar with the particular area of real estate in which the lot is located; that the area is zoned residential and that the seller knew it was zoned residential.

The complaint further states that the buyer "was a stranger to the area"; that he was inexperienced in matters of real estate transactions; that he purchased the lot to construct a house; that he did not know of the existence of a well under the land surface hidden from view; that if he had known of the well, he either would not have purchased the property or would have purchased it at a lower price; that the well constituted a defective condition of the lot; that the well made the property worth less for residential purposes than he had been led to believe; that the well made the property unsuitable for building without added expense; and that

knew of the existence of the well and did not sufficiently allege that the buyer was induced to act to his injury or damage. The buyer was given twenty days after remand to replead. *See Ollerman v. O'Rourke Co., Inc.*, Case No. 75–409, unpublished Per Curiam opinion filed May 3, 1977.

the seller's failure to disclose the existence of the well was relied upon by the buyer and he was thereby induced to buy this lot in ignorance of the well.

The buyer further alleges that he incurred additional expenses for water control and construction costs because of the well; that the sum of $2,722.04 was expended to attempt to stop the flow of water so that the subsoil would be suitable for building; and that the sum of $10,575 was "incurred with the builder due to change in plans necessitated by said condition and to correct the same."

Additional allegations applicable to what is labeled in the complaint as the "first cause of action" are that the seller, through its agents, knew of the existence of the underground well and, in order to induce buyer to buy the land, "falsely and with intent to defraud," failed to disclose this fact which it had a duty to disclose and which would have had a material bearing on the construction of a residence on the property.

Additional allegations applicable to what is labeled in the complaint as the "second cause of action" are that the seller, through its agents, knew or in the exercise of reasonable care should have known of the existence of the underground well; had the means to ascertain this fact; had a duty to ascertain and a duty to disclose this fact which would have had a material bearing on the construction of a residence on the property; and either knowingly or negligently breached its duty to the buyer in not informing the buyer of the underground well.

The buyer demands judgment on the first cause of action, or in the alternative, on the second cause of action, in the sum of $20,000.[3]

[3] The seller maintains that the complaint should be dismissed because the first and second causes of action are not stated in the alternative. Sec. 802.02, Stats. 1975, sets forth the general rules of pleading as follows:

The circuit court, without disclosing its rationale, overruled the seller's motion to dismiss the amended com-

"802.02 **General rules of pleading.** (1) CLAIMS FOR RELIEF. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (a) a short and plain statement of the claim, identifying the transaction, occurrence or event out of which the claim arises and showing that the pleader is entitled to relief and (b) a demand for judgment for the relief to which the pleader deems to be entitled. Relief in the alternative or of several different types may be demanded.

". . .

"(5) PLEADINGS TO BE CONCISE AND DIRECT; CONSISTENCY. (a) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

"(b) A party may set forth 2 or more statements of a claim or defense alternatively or hypothetically, either in one claim or defense or in separate claims or defenses. When 2 or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds. All statements shall be made subject to the obligations set forth in s. 802.05."

Thus, alternative statements of a claim can be stated as alternative versions of one claim or as separate claims. See also, Conway, *Wisconsin and Federal Court Procedure* s. 26.03 (2d ed. 1976). The complaint stated two separately entitled causes of action. The significant difference between the two causes of action as set forth in the complaint is that in the first cause of action the buyer alleged that the seller knew of the existence of the well and intentionally did not disclose the existence of the well and in the second cause of action the complaint recites that the seller knew or in the exercise of reasonable care should of known of the existence of the well and had the means and duty to ascertain the existence of the well and either knowingly or negligently failed to inform the buyer about the existence of the well.

A plaintiff need not state the theory of law under which he or she is pleading. If a pleaded statement of facts may permit recovery on two different theories, it is not required to indicate the theory or theories. *Jost v. Dairyland Power Cooperative*, 45 Wis.2d

plaint for failure to state a claim upon which relief can be granted.

The motion to dismiss for failure to state a claim, like the previously used demurrer, tests the legal sufficiency of the claim. The facts pleaded and all reasonable inferences from the pleadings are admitted to be true, but only for the purpose of testing the legal sufficiency of the claim, not for the purpose of trial. The pleadings are to be liberally construed with a view to substantial justice to the parties.[4] The complaint is not required to state all the ultimate facts constituting each cause of action; and the complaint should be dismissed as legally insufficient only if "it is quite clear that under no conditions can the plaintiff recover."[5]

This court has recognized that misrepresentation is a generic concept separable into the three familiar tort classifications: intent (sometimes called fraudulent misrepresentation, deceit or intentional deceit), negligence and strict responsibility.[6]

164, 172 N.W.2d 647 (1969); *Schweiger v. Loewi & Co., Inc.,* 65 Wis.2d 56, 65, 221 N.W.2d 882 (1974).

[4] *Schweiger v. Loewi & Co., Inc.,* 65 Wis.2d 56, 221 N.W.2d 882 (1974).

Sec. 802.02(6), Stats.:

"CONSTRUCTION OF PLEADINGS. All pleadings shall be so construed as to do substantial justice."

[5] Clausen and Lowe, *The New Wisconsin Rules of Civil Procedure, Chapters 801–803,* 59 Marq. L. Rev. 1, 54 (1976). *See also, Morgan v. Pennsylvania Gen'l Ins. Co.,* 87 Wis.2d 723, 731, 275 N.W.2d 660 (1979); *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 683, 271 N.W.2d 368 (1978); *Hartridge v. State Farm Mutual Automobile Ins. Co.,* 86 Wis.2d 1, 4–5, 271 N.W.2d 598 (1978); Wright and Miller, 5 *Federal Practice & Procedure* sec. 1215, p. 113 (1969).

[6] *Stevenson v. Barwineck,* 8 Wis.2d 557, 99 N.W.2d 690 (1959); *Whipp v. Iverson,* 43 Wis.2d 166, 168 N.W.2d 201 (1969); *Schweiger v. Loewi & Co., Inc.,* 65 Wis.2d 56, 221 N.W.2d 882 (1974). *See* note 27, *infra.*

In *Whipp v. Iverson,* 43 Wis.2d 166, 169–170, 168 N.W.2d 201 (1969), we described the elements of these three torts as follows:

"The bases of responsibility in these three classifications of torts have at least three elements in common: (1) The representation must be of a fact and made by the defendant; (2) the representation of fact must be untrue; and (3) the plaintiff must believe such representation to be true and rely thereon to his damage. The classifications differ in several respects. In intentional deceit the defendant must either know the representation is untrue or the representation was made recklessly without caring whether it was true or false and with intent to deceive and induce the plaintiff to act upon it to the plaintiff's pecuniary damage. In strict responsibility, the misrepresentation must be made on the defendant's personal knowledge or under circumstances in which he necessarily ought to have known the truth or untruth of the statement and the defendant must have an economic interest in the transaction. Intent to deceive and good-faith belief in the truth of the representation are immaterial. In this classification the speaker is supposed to possess complete knowledge of the facts or could normally be expected to know them without investigation. Harper and McNeely, *A Synthesis of The Law of Misrepresentation,* 22 Minn. L. Rev. (1938), 939, at Note 12, p. 988. A person is therefore justified in expecting infallibility as to the representations of fact. In negligence, the defendant need only fail to exercise ordinary care in making a misrepresentation or in ascertaining the facts but like other cases of negligence, it requires a duty of care or a voluntary assumption of a duty."

On appeal, the seller argues that the complaint fails to state a claim upon which relief can be granted for three reasons: First, the complaint does not state a claim for actionable intentional misrepresentation because, as a matter of law, the seller had no duty to disclose the existence of the well. Secondly, the complaint does not state a claim for actionable negligent misrepresentation

because, as a matter of law, the seller had no duty of care to the buyer. Third, the complaint does not allege any damages caused to the buyer by the purchase of the lot. We shall discuss each of these issues in turn.

## II.

We discuss first whether the complaint states a claim for intentional misrepresentation. Initially we observe, as did the seller, that the complaint does not allege the first two elements of the tort of intentional misrepresentation, namely that the seller made a representation of fact and that the representation was untrue. The gravamen of the wrong is the nature of the false words used and the reliance which they may reasonably induce. In lieu of these allegations of false words, the complaint recites that the seller failed to disclose a fact, the existence of the well. The general rule is that silence, a failure to disclose a fact, is not an intentional misrepresentation unless the seller has a duty to disclose.[7] If there is a duty to disclose a fact, failure to disclose that fact is treated in the law as equivalent to a representation of the nonexistence of the fact. In *Southard v. Occidental*

---

[7] 3 Restatement (Second) of *Torts*, sec. 551, Comment *b* (1977) states:

". . . In the absence of a duty of disclosure . . . one who is negotiating a business transaction is not liable in deceit because of his failure to disclose a fact that he knows his adversary would regard as material. . . ."

*See also*, Berman, *Caveat Emptor in Sales of Realty—Recent Assaults Upon the Rule*, 14 Vand L. Rev. 541, 561 (1961); James & Gray, *Misrepresentation—Part II*, 37 Md. L. Rev. 488, 523 (1978); Keeton, *Fraud—Concealment & Nondisclosure*, 15 Tex. L. Rev. 1, 11 (1936); Keeton, *Rights of Disappointed Purchasers*, 32 Tex. L. Rev. 1, 2–7 (1953); Goldfarb, *Fraud & Non-Disclosure: The Vendor-Purchaser Relation*, 8 W. Res. L. Rev. 5, 7 (1956).

*Life Ins. Co.,* 31 Wis.2d 351, 359, 142 N.W.2d 844 (1966), we said:

"A person in a business deal must be under a duty to disclose a material fact before he can be charged with a failure to disclose. Restatement, 3 Torts, p. 117, sec. 551 (1), states the rule as follows: 'One who fails to disclose to another a thing which he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter which he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.' "[8]

The question thus presented in the case at bar is whether the seller had a duty to disclose to the buyer the existence of the well. If there is a duty to disclose, the seller incurs tort liability for intentional misrepresentation (*i.e.* the representation of the non-existence of the fact), if the elements of the tort of intentional misrepresentation are proved. *See Whipp v. Iverson, supra,* 43 Wis.2d at 169.

The question of legal duty presents an issue of law, and Justice Currie, writing for this court, has pointed out that when a court resolves a question of legal duty the court is making a policy determination. *Fisher v. Simon,* 15 Wis.2d 207, 211–212, 112 N.W.2d 705 (1961). To

---

[8] Comment *d* to sec. 551 of the Restatement explains that "reasonable care to disclose" refers to the means of transmitting the information to the proper party if there is a duty to disclose.

"*d.* Under the rule stated in this Subsection the person under a duty of disclosure is not subject to liability merely because he has failed to bring the required information home to the person entitled to it. His duty is to exercise reasonable care to do so. If reasonable care is exercised, the fact that the information does not reach the person entitled to it does not subject him to liability. . . ."

demonstrate the truth of this assertion, this court quoted
Dean Prosser as follows:

"For more than two generations it has been repeated
that there can be no duty toward an unborn child; now
all of a sudden the cases on prenatal injury are going the
other way. It used to be held that one who gets himself
into danger owes no duty to a rescuer injured in saving
him; now all at once the duty is there. It was once well-
settled law that one who negligently made misrepresent-
ations could owe no possible duty to a third person into
whose hands they might come; there is now respectable
authority that in some situations such a duty can be
found. It was once the law that a landlord leasing a
small shop for the admission of the public owed no duty
to those who entered; all of the recent cases agree that
the duty is clear.

"These are shifting sands, and no fit foundation.
*There is a duty if the court says there is a duty; the
law, like the constitution, is what we make it. Duty is
only a word with which we state our conclusion that there
is or is not to be liability; it necessarily begs the es-
sential question.* When we find a duty, breach, and dam-
age, everything has been said. The word serves a useful
purpose in directing attention to the obligation to be
imposed upon the defendant, rather than the causal se-
quence of event; beyond that it serves none. In the
decision whether or not there is a duty, many factors
interplay: The hand of history, our ideas of morals and
justice, the convenience of administration of the rule,
and our social ideas as to where the loss should fall. In
the end the court will decide whether there is a duty on
the basis of the mores of the community, 'always keeping
in mind the fact that we endeavor to make a rule in each
case that will be practical and in keeping with the gen-
eral understanding of mankind.'" (Emphasis supplied.)[9]

---

[9] *Klassa v. Milwaukee Gas Light Co.*, 273 Wis. 176, 183–184, 77
N.W.2d 397 (1956) quoting Prosser, *Palsgraf Revisited*, 52 Mich.
L. Rev. 1, 14–15 (1953).

For a similar expression of this concept see Goldfarb, *Fraud &
Nondisclosure in the Vendor-Purchaser Relation*, 8 W. Res. L. Rev.
5, 7, 15 (1956): "The accepted theorem in this field may be summed

We recognize that the traditional rule in Wisconsin is that in an action for intentional misrepresentation the seller of real estate, dealing at arm's length with the buyer, has no duty to disclose information to the buyer and therefore has no liability in an action for intentional misrepresentation for failure to disclose.[10]

The traditional legal rule that there is no duty to disclose in an arm's-length transaction is part of the common law doctrine of caveat emptor which is traced to the attitude of rugged individualism reflected in the business economy and the law of the 19th century.[11] The law of misrepresentation has traditionally been closely aligned with the mores of the commercial world[12] because the type of interest protected by the law of misrepresentation in business transactions is the interest

---

up as follows: Silence or nondisclosure does not constitute an actionable wrong, unless the defendant is under a duty to speak and disclose. . . . The 'rule,' as stated, is not a reason, but rather a rationalization. Once the court imposes liability under the facts of a particular case, a duty is found to exist. And, conversely, once it is decided that the defendant for whatever true 'reasons,' should not be held liable, it is 'concluded' that there was no duty . . . . The court refuses to admit, or to realize, that a duty exists *if* the court finds it, that it is not a *condition* to the imposition of liability but a *consequence* thereof."

[10] *Kamuchey v. Trzesniewski*, 8 Wis.2d 94, 99, 98 N.W.2d 403 (1959); *Southard v. Occidental Life Ins. Co.*, 31 Wis.2d 351, 142 N.W.2d 844 (1966); *Guyer v. Cities Service Oil Co.*, 440 F. Supp. 630, 632 (E.D. Wis. 1977).

[11] Friedman, *Contract Law in America* 103 (1956); 12 *Williston on Contracts*, sec. 1497, p. 377 (Jaeger 3d ed. 1970); Keeton, *Fraud —Concealments & Non-Disclosure*, 15 Tex. L. Rev 1, 5, n. 13 (1936); Hamilton, *The Ancient Maxim Caveat Emptor*, 40 Yale L.J. 1133 (1931); Kesseler & Fine, *Culpa in Contrahendo, Bargaining in Good Faith, & Freedom of Contract: A Comparative Study*, 77 Harv. L. Rev. 401, 440 (1964); *Sorrell v. Young*, 6 Wash. App. 220, 491 P.2d 1312 (1971).

[12] James and Gray, *Misrepresentation—Part I*, 37 Md. L. Rev. 286, 287 (1977).

in formulating business judgments without being misled by others—that is, an interest in not being cheated.

Under the doctrine of caveat emptor no person was required to tell all that he or she knew in a business transaction, for in a free market the diligent should not be deprived of the fruits of superior skill and knowledge lawfully acquired. The business world, and the law reflecting business mores and morals, required the parties to a transaction to use their faculties and exercise ordinary business sense, and not to call on the law to stand *in loco parentis* to protect them in their ordinary dealings with other business people.

"The picture in sales and in land deals is, in the beginning, that of a community whose trade is simple and face to face and whose traders are neighbors. The goods and the land were there to be seen during the negotiation and particularly in the case of land, everybody knew everybody's land; if not, trade was an arm's length proposition with wits matched against skill. Of course caveat emptor would be the rule in such a society. But caveat emptor was more than a rule of no liability; it was a philosophy that left each individual to his own devices with a minimum of public imposition of standards of fair practice. In the beginning the common law did grant relief from fraud and did recognize that if the seller made an express promise as to his product at the time of the sale he remained liable after the sale on this 'collateral' promise. Indeed covenants for title in the deed were such collateral promises which survived the sale." Dunham, *Vendor's Obligation as to Fitness of Land for a Particular Purpose,* 37 Minn. L.R. 108, 110 (1953).

Over the years society's attitudes toward good faith and fair dealing in business transactions have undergone significant change, and this change has been reflected in the law. Courts have departed from or relaxed the "no duty to disclose" rule by carving out exceptions to the rule and by refusing to adhere to the rule when it works an injustice. Thus courts have held that the rule

does not apply where the seller actively conceals a defect or where he prevents investigation;[13] where the seller has told a half-truth or has made an ambiguous statement if the seller's intent is to create a false impression and he does so; where there is a fiduciary relationship between the parties; or where the facts are peculiarly and exclusively within the knowledge of one party to the transaction and the other party is not in a position to discover the facts for himself.[14]

On the basis of the complaint, the case at bar does not appear to fall into one of these well-recognized exceptions to the "no duty to disclose" rule. However, Dean Prosser has found a "rather amorphous tendency on the part of most courts toward finding a duty of disclosure in cases where the defendant has special knowledge or means of knowledge not open to the plaintiff and is aware that the plaintiff is acting under a misapprehension as

---

[13] 3 Restatement (Second) of *Torts,* sec. 550 (1977) states:

"One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering."

*Kamuchey v. Trzesniewski,* 8 Wis.2d 94, 99, 98 N.W.2d 403 (1959); *Laehn Coal & Wood Co. v. Koehler,* 267 Wis. 297, 300, 64 N.W.2d 823 (1954).

[14] James & Gray, *Misrepresentation—Part II,* 37 Md. L. Rev. 488, 523–527 (1978); 1 Harper & James, *The Law of Torts* sec. 7.14, p. 588 (1956); Prosser, *Law of Torts* 696–697 (1971); 12 *Williston on Contracts* sec. 1497 *et seq.* (Jaeger 3d ed. 1970); 8A Thompson, *Commentaries on the Modern Law of Real Property* secs. 4469, 4470 (1963); Note, *Caveat Emptor in the Sale of Real Property—Epitaph to an Inequitable Maxim,* 4 Memphis St. U. L. Rev. 54 (1973); Seavey, *Caveat Emptor as of 1960,* 38 Tex. L. Rev. 439 (1960); Goldfarb, *Fraud & Nondisclosure in the Vendor-Purchaser Relation,* 8 W. Res. L. Rev., 5, 10 (1956); Keeton, *Fraud—Concealment & Nondisclosure,* 15 Tex. L. Rev. 1, 2 (1936); 3 Restatement (Second) Torts, secs. 527, 529 (1977); *Killeen v. Parent,* 23 Wis.2d 244, 251–252, 127 N.W.2d 38 (1964).

to facts which could be of importance to him, and would probably affect his decision." [15]

[15] Prosser, *Law of Torts* 697 (1971).

The New Jersey Supreme Court, reversing a summary judgment and remanding for a full trial in a rescission action because the house was infested with roaches, a fact not disclosed by the seller, stated:

"Our courts have come a long way since the days when the judicial emphasis was on formal rules and ancient precedents rather than on modern concepts of justice and fair dealing. While admittedly our law has progressed more slowly in the real property field than in other fields, there have been notable stirrings even there. . . . In *Schipper* [*v. Levitt & Sons, Inc.*, 44 N.J. 70, 207 A.2d 314 (1965)] we elevated the duties of the builder-vendor in the sale of its homes and in the course of our opinion we repeatedly stressed that our law should be based on current notions of what is 'right and just.' 44 N.J. at 90, 207 A.2d 314. In *Reste* [*Realty Corp. v. Cooper*, 53 N.J. 444, 251 A.2d 268 (1969)] we expressed similar thoughts in connection with the lease of real property. We there noted that despite the lessee's acceptance of the premises in their 'present condition' (a stipulation comparable to that of the purchasers in their contract here), the landlord was under a duty to disclose a material latent condition, known to him but unobservable by the tenant; we pointed out that in the circumstances 'it would be a wholly inequitable application of *caveat emptor* to charge her with knowledge of it.' 53 N.J. at 453–454, 251 A.2d at 273. Both *Schipper* and *Reste* were departures from earlier decisions which are nonetheless still relied on by the seller here. No purpose would now be served by pursuing any discussion of those earlier decisions since we are satisfied that current principles grounded on justice and fair dealing, embraced throughout this opinion, clearly call for a full trial below. . . ." *Weintraub v. Krobatsch*, 64 N.J. 445, 317 A.2d 68, 75 (1974).

For cases illustrating the trend toward imposing a duty to disclose in arm's-length business transactions, *see, e.g., Weikel v. Sterns*, 142 Ky. 513, 134 S.W. 908 (1911) (sewage pit); *Kaze v. Compton*, 283 S.W.2d 204 (Ky. 1955) (improper drainage and waste disposal); *Clauser v. Taylor*, 44 Cal. App.2d 453, 112 P.2d 661 (1941) (lot filled with debris and covered); *Greenberg v. Glickman*, 50 N.Y.S.2d 489 (1944), *modified*, 268 App. Div. 882, 51 N.Y.S.2d 96 (1945) (subsurface water with likelihood of seepage through basement floor); *Cohen v. Vivian*, 141 Colo. 443, 349 P.2d

Dean Keeton described these cases abandoning the "no duty to disclose" rule as follows:

"In the present stage of the law, the decisions show a drawing away from this idea [that nondisclosure is not actionable], and there can be seen an attempt by many courts to reach a just result in so far as possible, but yet maintaining the degree of certainty which the law must have. The statement may often be found that if either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose then his silence is fraudulent.

"The attitude of the courts toward nondisclosure is undergoing a change and . . . it would seem that the object of the law in these cases should be to impose on parties to the transaction a duty to speak whenever justice, equity, and fair dealing demand it. This statement is made only with reference to instances where the party to be charged is an actor in the transaction. This duty to speak does not result from an implied representation by silence, but exists because a refusal to speak constitutes unfair conduct." *Fraud—Concealment and Nondisclosure*, 15 Tex. L. Rev. 1, 31 (1936).

The test Dean Keeton derives from the cases to determine when the rule of nondisclosure should be abandoned

366 (1960) (filled land resulting in improper settling); *Brooks v. Ervin Construction Co.*, 253 N.C. 214, 116 S.E.2d 454 (1960) (filled land resulting in improper settling); *Obde v. Schlemeyer*, 56 Wash.2d 449, 353 P.2d 672 (1960) (termite infestation); *Curran v. Heslop*, 115 Cal. App.2d 476, 252 P.2d 378 (1953) (noncompliance with building codes); *Milmoe v. Dixon*, 101 Cal. App.2d 257, 225 P.2d 273 (1950) (noncompliance with building codes); *Miles v. McSwegin*, 58 Ohio St.2d 97, 388 N.E.2d 1367 (1979) (termite infestation); *Snelson v. Ondulando Highlands Corp.*, 84 Cal. Rptr. 800, 5 Cal. App.3d 243, *reh. denied*, 85 Cal. Rptr. 806, 5 Cal. App.3d 243 (1970) (filled land resulting in landslide); *Service Oil Co. v. White*, 218 Kan. 87, 542 P.2d 652, 660 (1975) (violation of city ordinance); *Cooper v. Cordova Sand & Gravel Co. Inc.*, 485 S.W.2d 261, 267 (Tenn. App. 1971) (settling of land over gravel pit); *Griffith v. Byers Const. Co.*, 212 Kan. 65, 510 P.2d 198 (1973) (soil condition).

—that is "whenever justice, equity and fair dealing demand it"—presents, as one writer states, "a somewhat nebulous standard, praiseworthy as looking toward more stringent business ethics, but possibly difficult of practical application." Case Note, *Silence as Fraudulent Concealment—Vendor & Purchaser—Duty to Disclose,* 36 Wash. L. Rev. 202, 204 (1961).[16]

---

[16] Goldfarb, *Fraud & Nondisclosure in the Vendor-Purchaser Relation,* 8 Western Res. L. Rev. 5, 41–42 (1956), analyzed the trend by the courts to impose a duty to disclose as follows:

". . . If a failure to disclose is, under the particular facts, shocking enough to the moral sense, relief will be granted. If it falls short of this effect, the courts will say that whatever the status of the defendant's conduct in the 'forum of the conscience' it is not actionable in the forum of the law.

"Many cases demonstrate that the courts *are* concerned with honesty and morality. One speaks of 'honesty and good faith' as that which requires disclosure.[149] Another speaks of 'common honesty and fair dealing.'[150] And, when, as often happens, the ultimate task of deciding whether there was a fraud, is assigned to the jury, the members of that body (except to the extent that they are effectively limited by the court's instructions) will surely apply their own moral standards in deciding whether the defendant's conduct was sufficiently reprehensible to justify giving the plaintiff relief.[151]

"It has been said that there has been a shift in business ethics from a period in which reliance was hardly ever justified and when one could assume that the other party would overreach, to one in which there prevails a new and higher standard.[152] Others have said that the doctrine of caveat emptor has lost much of its content.[153] Without evaluating the accuracy of these observations, one may safely conclude that they possess some basis, and that both judge and jury, try as they might to objectify their attitudes, are sensitive at least to the grosser changes in business ethics. The question here is how high an ethical standard will be demanded. Or, stated differently, how much of a premium will be placed on shrewdness and astute bargaining skill, either of the vendor or the purchaser, which falls short of active concealment or clear misrepresentation? Like many other legal questions, it is fundamentally an ethical and social question. The answer is still

Professors Large, MacDonald, and Raushenbush of the University of Wisconsin Law School, warn real estate agents of the possibility of silence being misrepresentation and give them the following advice:

"[N]ote this telling statement by a leading text authority: 'The law appears to be working toward the ultimate conclusion that full disclosure of all material facts must be made whenever elementary fair conduct demands it.' [Prosser on Torts (2d ed. 1955) p. 535]

"In other words, if you have a sensitive conscience let it be your guide and you should have no difficulty. You are in the best position to decide whether 'elementary fair conduct' demands that you tell the buyer.

"Where the material facts unknown to the buyer have to do with a physical condition known to the agent but difficult for the buyer to find, certainly then there is

being formulated, and since the law, though gradual, is not static, the process of formulation will be endless."

"149 Lovell v. Smith, 232 Ala. 626, 169 So. 280 (1936).

"150 Weiland v. Turkelson, 38 N.J. Super. 239, 118 A.2d 689 (1955).

"151 At least one writer believes that the question whether the particular nondisclosure is actionable is one properly in the province of the court. Yet the same writer declares that the standard of fair conduct is that of the 'ordinary ethical person.' This would seem to require the type of *factual* determination which, in our jurisprudence, has traditionally been the prerogative of the jury. Keeton, *Fraud—Concealment and Non-disclosure,* 15 Tex. L. Rev. 1 (1936).

"152 Prosser, Torts 552 et seq. (2d ed. 1955).

"153 Keeton, op cit. supra note 151."

But *cf.:*

"Fully aware of the dangers of generalization and of the importance of knowing the exceptions, this writer is willing to state that in the typical transaction, nondisclosure of material facts on the part of a vendor or purchaser is not fraudulent. This is the older law, and, notwithstanding a movement in the other direction, manifested by the gradual multiplication of qualifying exceptions, it is the modern law as well." *Id.* at 43, 44.

a duty to speak and tell the buyer about it." *Wisconsin Real Estate Law* 4–6 (1976).

The draftsmen of the most recent Restatement of *Torts* (Second) (1977) have attempted to formulate a rule embodying this trend in the cases toward a more frequent recognition of a duty to disclose. Sec. 551(1) of the Restatement sets forth the traditional rule that one who fails to disclose a fact that he knows may induce reliance in a business transaction is subject to the same liability as if he had represented the nonexistence of the matter that he failed to disclose if, and only if, he is under a duty to exercise reasonable care to disclose the matter in question.[17] Subsection (2) of sec. 551 then sets forth the conditions under which the seller has a duty to use reasonable care to disclose certain information.[18]

---

[17] "Sec. 551   **Liability for Nondisclosure**

"(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question."

[18] Sec. 551:

"(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated.

"(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

"(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

"(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

"(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that

Sec. 551(2) (e) is the "catch-all" provision setting forth conditions under which a duty to disclose exists; it states that a party to a transaction is under a duty to exercise reasonable care to disclose to the other "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." Comment *l* to sec. 551 recognizes the difficulty of specifying the factors that give rise to a reasonable expectation of disclosure:

"*l.* The continuing development of modern business ethics has, however, limited to some extent this privilege to take advantage of ignorance. There are situations in which the defendant not only knows that his bargaining adversary is acting under a mistake basic to the transaction, but also knows that the adversary, by reason of the relation between them, the customs of the trade or other objective circumstances, is reasonably relying upon a disclosure of the unrevealed fact if it exists. In this type of case good faith and fair dealing may require a disclosure.

"It is extremely difficult to be specific as to the factors that give rise to this known, and reasonable, expectation of disclosure. In general, the cases in which the rule stated in Clause (e) has been applied have been those in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and sub-

---

the other is about to act in reliance upon it in a transaction with him; and

"(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."

stance he is unaware. In such a case, even in a tort action for deceit, the plaintiff is entitled to be compensated for the loss that he has sustained."

Section 551(2)(e) of the Restatement (Second) of *Torts* limits the duty to disclose to disclosure of those "facts basic" to the transaction. Comment *j* to sec. 551 differentiates between basic facts and material facts as follows:

"A basic fact is a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with. Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence. These facts may be material, but they are not basic."[19]

However, the draftsmen of the Restatement recognized that the law was developing to expand the duty to disclosure beyond the duty described in sec. 551.

"There are indications, also, that with changing ethical attitudes in many fields of modern business, the concept of facts basic to the transaction may be expanding and the duty to use reasonable care to disclose the facts may be increasing somewhat. This Subsection is not intended to impede that development." Comment *l,* Sec. 551, 3 Restatement (Second) of *Torts* (1977).

This court has moved away from the rule of caveat emptor in real estate transactions, as have courts in other states.

In *Pines v. Perssion,* 14 Wis.2d 590, 594, 595, 111 N.W. 2d 409 (1961), this court, while recognizing that a tenant is a purchaser of an estate in land and is subject to

---

[19] For further discussion of material facts, see pp. 42–43, *infra,* and Coffey & Welch, *Federal Regulation of Land Sales: Full Disclosure Comes Down to Earth,* 21 Case Western Res. L. Rev. 5, 58–59 (1969).

the doctrine of caveat emptor, concluded that "the frame of reference in which the old common-law rule operated has changed." We held that the lease contained an implied warranty of habitability.[20]

In *Fisher v. Simon*, 15 Wis.2d 207, 112 N.W.2d 705 (1961), this court was faced with the issue of whether a builder-vendor should be liable for pecuniary damage caused by defective home construction due to his failure to exercise ordinary care. Unwilling to follow earlier cases holding that the contractor was not liable for injury arising from negligent construction after completion of the work and its acceptance by the owner, this court concluded that the policy of the law does not preclude recovery for damages resulting from the negligence of a builder-vendor.

An analysis of the cases of this jurisdiction and others indicates that the presence of the following elements is significant to persuade a court of the fairness and equity of imposing a duty on a vendor of real estate to disclose known facts: the condition is "latent" and not readily observable by the purchaser; the purchaser acts upon the reasonable assumption that the condition does (or does not) exist; the vendor has special knowledge or means of knowledge not available to the purchaser; and the existence of the condition is material to the transac-

[20] For a discussion that the doctrine of strict liability is applicable to misrepresentation or that courts should extend to the purchaser of raw land from a vendor in the real estate business the protection of implied warranty (here a warranty of fitness for a particular purpose) that the law affords a purchaser of personal property, *see* Haskell, *The Case for an Implied Warranty of Quality in Sales of Real Property*, 53 Georgetown L. J. 633 (1965); Note, *The Doctrine of Caveat Emptor as Applied to Both the Leasing and Sale of Real Property: The Need for Reappraisal and Reform*, 2 Rutgers Camden L. J. 120 (1970); Dunham, *Vendor's Obligation as to Fitness of Land for a Particular Purpose*, 37 Minn. L. Rev. 108, 118 (1953).

tion, that is, it influences whether the transaction is concluded at all or at the same price.[21]

The seller argues that public policy demands that we not abandon the traditional rule that no action lies against the seller of real estate for failure to disclose in an arm's-length transaction.[22] The seller contends, in its brief, that if this court affirms the circuit court's order overruling the motion to dismiss and allows the

[21] Prosser, *Law of Torts*, 697 (1971); Berger & Hirsch, *Pennsylvania Tort Liability for Concealment & Nondisclosure in Business Transactions*, 21 Temple L.Q. 368 (1948); Keeton, *Fraud—Concealment & Nondisclosure*, 15 Tex. L. Rev. 1, 31–40 (1936); Keeton, *Rights of Disappointed Purchasers*, 32 Tex. L. Rev. 1, 2–7 (1953); 12 Williston *Contracts*, sec. 1498 (Jaeger 3d ed. 1970); *Obde v. Schlemeyer*, 56 Wash.2d 449, 353 P.2d 672 (1960); *Sorrell v. Young*, 6 Wash. App. 220, 491 P.2d 1312 (1971); *Loghry v. Capel*, 257 Iowa 285, 132 N.W.2d 417 (1965); *Weintraub v. Krobatsch*, 64 N.J. 445, 317 A.2d 68 (1974).

[22] Ordinarily we will not consider the abandonment of a traditional rule when the case comes before the court on demurrer (now motion to dismiss), because in many cases where there has been an order entered on a demurrer the trial court may fail to address itself directly to the question of whether an existing rule of law should be abandoned as a matter of judicial policy. This court believes it is important to have the expression of a trial court's reasoning on the particular case when the case is reviewed. *Crawford v. Dickman*, 72 Wis.2d 151, 155, n. 3, 240 N.W.2d 165 (1976); *Gonzales v. Wilkinson*, 68 Wis.2d 154, 158, 227 N.W.2d 907 (1975); *Antoniewicz v. Reszczynski*, 70 Wis.2d 836, 841, 236 N.W.2d 1 (1975).

However, in the case at bar we shall decide the question of whether the seller had a legal duty to disclose the existence of the well. This is the second time the present case is before us on the seller's assertion that the buyer has not stated a claim. On both occasions the trial court held that a claim had been stated, although we have not had the benefit of the circuit court's reasoning in a memorandum decision. We must assume that the circuit court believed that if the facts alleged could be proved, the law imposed a duty to disclose. We can decide the legal duty of the seller in the instant case because of the narrow issue presented by the allegations.

buyer to proceed to trial, the court is adopting "what really amounts to a strict policy of 'let the seller beware.'" The seller goes on to state, "Woe indeed to anyone who sells a home, a vacant lot or other piece of real estate and fails to itemize with particularity or give written notice to each prospective buyer of every conceivable condition in and around the property, regardless of whether such a condition is dangerous, defective or could become so by the negligence or recklessness of others. A seller of real estate is not and should not be made an insurer or guarantor of the competence of those with whom the purchaser may later contract."

The seller's position is that imposing a duty to disclose on a vendor of real estate dealing at arm's length with a purchaser would result in an element of uncertainty pervading real estate transactions; that there would be chaos if a vendor were subject to liability after parting with ownership and control of the property; that a rash of litigation would ensue; and that a purchaser could protect himself or herself by inspection and inquiry and by demanding warranties.

The seller's arguments are not persuasive in light of the facts alleged in the complaint and our narrow holding in this case.[23]

Where the vendor is in the real estate business and is skilled and knowledgeable and the purchaser is not, the purchaser is in a poor position to discover a condition which is not readily discernible, and the purchaser may justifiably rely on the knowledge and skill of the vendor. Thus, in this instant case a strong argument for imposing a duty on the seller to disclose material facts is this "re-

[23] For a discussion of the arguments for and against the continued application of *caveat emptor*, see Note, *The Doctrine of Caveat Emptor as Applied to Both The Leasing & Sale of Real Property: The Need for Reappraising and Reform*, 2 Rutgers Camden L. J. 120, 134 (1970).

liance factor." The buyer portrayed in this complaint had a reasonable expectation of honesty in the marketplace, that is, that the vendor would disclose material facts which it knew and which were not readily discernible. Under these circumstances the law should impose a duty of honesty on the seller.

In order to determine whether the complaint in the case at bar states a claim for intentional misrepresentation we hold that a subdivider-vendor of a residential lot has a duty to a "non-commercial" purchaser to disclose facts which are known to the vendor, which are material to the transaction, and which are not readily discernible to the purchaser. A fact is known to the vendor if the vendor has actual knowledge of the fact or if the vendor acted in reckless disregard as to the existence of the fact. This usage of the word "know" is the same as in an action for intentional misrepresentation based on a false statement. See *Stevenson v. Barwineck*, 8 Wis.2d 557, 99 N.W.2d 690 (1959); *Whipp v. Iverson*, 43 Wis.2d at 169, and 3 Restatement (Second) of *Torts*, secs. 526–529 (1977). A fact is material if a reasonable purchaser would attach importance to its existence or nonexistence in determining the choice of action in the transaction in question; or if the vendor knows or has reason to know that the purchaser regards or is likely to regard the matter as important in determining the choice of action, although a reasonable purchaser would not so regard it. *See* 3 Restatement (Second) of *Torts*, sec. 538 (1977). Whether the fact is or is not readily discernible will depend on the nature of the fact, the relation of the vendor and purchaser and the nature of the transaction.[24]

The seller's brief asserts that the well is not a material fact because it does not constitute a defective con-

---

[24] For a discussion of "material facts" and "facts readily discernible" as these questions relate to "justifiable reliance," *see* text at note 26 *infra*.

dition; that the existence of the well was well known in the community;[25] and that the buyer should have made inquiry about the lot. These are matters to be raised at trial, not on a motion to dismiss. The buyer must prove at trial that the existence of the well was a material fact and that his reliance was justifiable.[26]

---

[25] The seller correctly points out that the buyer alleged this fact in his original complaint. We do not accept seller's assertion that on a motion to dismiss we must look to the allegations of both the original and the amended complaints. We need look only at the amended complaint which has supplanted the original complaint. Allegations in the original complaint may constitute evidence at trial. *Dixon v. Davidson*, 202 Wis. 19, 22, 231 N.W. 276 (1930); *Werner v. Riemer*, 255 Wis. 386, 388, 39 N.W.2d 457, 917 (1949); *Schweiger v. Loewi & Co., Inc.*, 65 Wis.2d 56, 58, 221 N.W.2d 882 (1974).

[26] We previously discussed the purchaser's reliance on the seller in determining whether to impose a duty on the seller to disclose material facts which are not readily discernible. "Reliance" is thus an important factor in determining the existence of the duty to disclose, but it is also an element of the tort of intentional misrepresentation. The buyer in the case at bar has to prove the elements of intentional misrepresentation which this court has frequently set forth:

" 'To be actionable the false representation must consist, first, of a statement of fact which is untrue; second, that it was made with intent to defraud and for the purpose of inducing the other party to act upon it; third, that he did in fact rely on it and was induced thereby to act, to his injury or damage.' " *First Credit Corp. v. Myricks*, 41 Wis.2d 146, 149, 163 N.W.2d 1 (1968).

*See 3* Restatement (Second) of Torts, sec. 525 (1977).

As we noted previously, the failure to disclose (silence), if there is a duty to speak, is typically treated as the equivalent of a representation of the nonexistence of the fact. *See* p. 5 *supra* and *see also, e.g.,* Wis. J I—Civil, No. 2401.

Goldfarb, in his article entitled *Fraud & Nondisclosure in the Vendor-Purchaser Relation,* 8 Western R. L. Rev. 5, 6–9 (1956), points up some of the difficulties of treating a "nondisclosure" as if it were fraudulent misrepresentation—especially as to the element of reliance:

"The courts and commentators treat actionable silence or, as it is more often denominated, 'actionable nondisclosure' as a variety

## III.

We turn now to the second cause of action, an action in negligence based on misrepresentation.[27]  We reach this

of misrepresentation. It is one of the implied theses of the present inquiry that it is not logical, or even helpful, to do so. True, under some circumstances, a failure to speak may amount to the equivalent of an actual, verbal representation of fact. Silence is, after all, a type of conduct, or at least of forbearance. If the representation thus implied is, in fact, false, and if the other elements of fraud are present, the plaintiff ought to be entitled to a remedy. But, under many circumstances, silence is merely silence. It says nothing. The silent party may fail to deny or assert a given fact. But it may be unfair and unreasonable to label his behavior as a representation, much less a *mis*representation. And yet, even under such circumstances, the silence may be tortious.

"The courts' insistence on relating such nondisclosure to misrepresentation seems to stem from a tradition of labeling and categorizing. It will avail us little to fight this tendency. It is enough to be aware of it. This awareness alone can help prevent us from falling prey to that most treacherous of semantic traps: the tyranny of labels.

". . .

"[In an action for intentional misrepresentation based on nondisclosure, I] assume all the formal elements of fraud [must be proved]: scienter, materiality, falsity, intent to induce 'reliance' and injury. Reliance is thus emphasized because it may be asked whether one relies on silence. In effect one may rely on appearances. But this is not the same, for silence does not always create an appearance. This question was discussed above in connection with the problem of whether or not nondisclosure always involves a representation."

In an action for intentional misrepresentation, the recipient of the false representation can recover only if he relies on the representation and his reliance is justifiable. Reliance upon a false representation is not justifiable unless the matter misrepresented is material. 3 Restatement (Second) of Torts, secs. 537 and 538 (1977).

For a discussion of the recipient's duty to investigate and his or her ability to rely on a representation which is obviously false, where the speaker made a false representation of fact, *see* 3 Restatement (Second) of Torts, secs. 540 and 541 (1977):

issue because this case has come before this court twice on the seller's motion to dismiss this cause of action and because we are concerned that unless we discuss it confusion may be caused in the trial of the case by our prior *per curiam* opinion.

This court has held that liability for misrepresentation of a fact can be imposed on the speaker who fails to exercise reasonable care in making the representation. *Stevenson v. Barwineck*, 8 Wis.2d 557, 563, 564, 99 N.W. 2d 690 (1959).

However, in the case at bar, unlike the usual case of negligent misrepresentation, there is no allegation that the seller negligently disseminated false information; in the case at bar the allegation is that the seller negligently failed to disseminate material information. The complaint treats nondisclosure of a fact which the seller

"Sec. 540. **Duty to Investigate**

"The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation."

"Sec. 541. **Representation Known to Be or Obviously False**

"The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him."

[27] For comparison of intentional and negligent misrepresentation, *see*, James & Gray, *Misrepresentation—Part I*, 37 Md. L. Rev. 286, 296–315 (1977); 3 Restatement (Second) of Torts, secs. 526, 552 (1977); Smith, *Liability for Negligent Language*, 14 Harv. L. Rev. 184 (1900); Williston, *Liability for Honest Misrepresentation*, 24 Harv. L. Rev. 415 (1911); Bohlen, *Misrepresentation as Deceit, Negligence, or Warranty*, 42 Harv. L. Rev. 733 (1929); Green, *Deceit*, 16 Va. L. Rev. 749, 758–762 (1930); Carpenter, *Responsibility for Intentional, Negligent & Innocent Misrepresentation*, 24 Ill. L. Rev. 749 (1930); Bohlen, *Should Negligent Misrepresentations Be Treated as Negligence or Fraud*, 18 Va. L. Rev. 703 (1932); James, *Limitations on Liability for Economic Loss Caused by Negligence: A Pragmatic Appraisal*, 25 Vand. L. Rev. 43 (1972); Note, *Fraud-Negligence-Liability for Innocent Misrepresentation*, 21 Minn. L. Rev. 434 (1936); Note, *Deceit & Negligent Misrepresentation in Maryland*, 35 Md. L. Rev. 651 (1976).

has a duty to disclose as equivalent to a statement of the nonexistence of the fact.[28]

The complaint appears to recite in the alternative (1) that the seller knew of the existence of the well or (2) that the seller had reasonable cause to know of the existence of the well, and that, in either event, the seller knowingly failed to disclose the information to the buyer or failed to exercise ordinary care in supplying the information to the buyer. As noted previously, the allegations in the intentional misrepresentation cause of action were, *inter alia*, that the seller knew of the existence of the well and intentionally failed to disclose the fact in order to induce the buyer to enter into the transaction.

We have frequently stated that in order to constitute a cause of action for negligence there must exist (1) a duty of care on the part of the defendant; (2) a breach of the duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Coffey v. Milwaukee,* 74 Wis.2d 526, 531, 247 N.W.2d 132 (1976).

The seller asserts that it had no duty of care to the buyer. We have frequently said that the concept of duty, as it relates to negligence cases, is inexorably interwoven with foreseeability. The duty of each person is to exercise ordinary care to refrain from any act which will cause foreseeable harm to another, to refrain from any act which creates an unreasonable risk to others. In *Antoniewicz v. Reszczynski,* 70 Wis.2d 836, 857, 236 N.W.2d 1 (1975), we described the standard of ordinary care used in negligence cases in Wisconsin, and we explained that if the action is negligent under the Wisconsin standard the question becomes one of cause which may include public policy factors:

[28] For similar treatment see Wis. J I—Civil No. 2403.

". . . By such standard of ordinary care, we mean the standard that is used in all other negligence cases in Wisconsin. Typical of such formulations is that appearing in *Osborne v. Montgomery* (1931), 203 Wis. 223, 236, 234 N.W. 372. *See also: Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N.W.2d 29; *Schilling v. Stockel* (1965), 26 Wis.2d 525, 133 N.W.2d 335. Under that test, as we have repeatedly stated, negligence is to be determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk to others. That test is to be applied at the negligence phase of the analysis to the world at large and not to the particular plaintiff. In this respect, our analysis of negligence does not follow the Cardoza majority opinion in *Palsgraf v. Long Island R. R. Co.* (1928), 248 N.Y. 339, 162 N.E. 99. We rather rely upon the Andrews dissenting rationale that, if the defendant has been negligent under that standard, the question is one of cause—substantial factor, *i.e.*, cause in fact, and proximate cause, which may include policy factors that may exclude liability in the particular circumstances. . . ."

As Justice CONNOR HANSEN explained for the court in *Coffey v. Milwaukee*, 74 Wis.2d 526, 540, 247 N.W.2d 132 (1976), an appeal from an order overruling demurrers, liability does not necessarily follow even when negligence and negligence as a cause in fact of injury are present. Public policy considerations may preclude liability. These public policy considerations are an element of legal cause, and the application of the public policy considerations is for the court to determine.[29] In *Hass v. Chicago & North Western Ry. Co.*, 48 Wis.2d 321, 326, 179 N.W.2d 885 (1970), which this court quoted in *Coffey v. Milwaukee, supra,* we explained:

---

[29] *Coffey v. Milwaukee,* 74 Wis.2d 526, 541, 247 N.W.2d 132 (1976); *Hass v. Chicago & N. W. Ry. Co.,* 48 Wis.2d 321, 326–327, 179 N.W.2d 885 (1970); *Howard v. Mt. Sinai Hospital, Inc.,* 63 Wis.2d 515, 518–519, 217 N.W.2d 383, 219 N.W.2d 576 (1974).

"[N]egligence plus an unbroken sequence of events establishing cause-in-fact does not necessarily lead to a determination that the defendant is liable for the plaintiff's injuries. The determination to not impose liability in instances where a negligent act has been committed and the act is a 'substantial factor' in causing the injury rests upon considerations of public policy."

We have enumerated several public policy reasons for not imposing liability despite a finding of negligence as a causal factor producing injury:

"(1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point." *Morgan v. Pennsylvania Gen'l Ins. Co.*, 87 Wis. 2d 723, 737, 275 N.W.2d 660 (1979); *Stewart v. Wulf*, 85 Wis.2d 461, 479, 271 N.W.2d 79 (1978).

Courts have imposed liability in negligence actions for personal injury or property damage caused by false statements or caused by nondisclosure. However, courts have been more reluctant to impose liability in negligence actions for misrepresentations causing pecuniary loss (not resulting from bodily harm or physical damage to property).[30] James and Gray *(Misrepresentation— Part I*, 37 Md. L. Rev. 286, 306, 307 (1977)) explain the courts' reluctance to impose liability for negligent misrepresentation causing pecuniary loss as follows:

---

[30] For a discussion of pecuniary loss, that is, the invasion of interests of a financial or commercial character in the course of business dealings, as distinguished from losses from the invasions of tangible interests of person and property, *see* Prosser, *Law of Torts*, 683–684, 704 (1971); 3 Restatement (Second) of *Torts*, ch. 22, Scope Note, p. 54 (1977).

"Where misrepresentations entail the foreseeability of physical harm and such harm in fact results, the ordinary rules of negligence have for some time been applied.[1] Courts have been more reluctant, however, to impose liability on this basis where a misrepresentation leads solely to economic loss.[2] The reason for the difference is that by and large the range of physical harm is more limited.[3] In the field of economic harm, however, '[i]f liability for negligence exists, a thoughtless slip or blunder . . . may expose [defendants] to a liability in an indeterminate amount for an indeterminate time to an indeterminate class.'[4]

"[1] See, e.g., Freeman v. United States, 509 F.2d 626 (6th Cir. 1975) (air traffic controller negligently gave wrong information about location and direction to pilot of plane carrying parachutists, who consequently jumped, to their death, over Lake Erie instead of target airfield; government liable); Jones v. Stanko, 118 Ohio St. 147, 160 N.E. 456 (1928); Clay v. A.J. Crump & Sons Ltd., [1964] 1 Q.B. 533 (C.A. 1963).

"[2] This parallels a general reluctance to impose liability in negligence for economic loss which does not result from bodily harm to claimant or from physical damage to property in which he has a proprietary interest. See, e.g., James, Limitations on Liability for Economic Loss Caused by Negligence: A Pragmatic Appraisal, 25 VAND. L. REV. 43 (1972); note 23 infra. Where physical damage is threatened and caused, however, recovery for consequential economic loss is regularly allowed. See generally 2 F. HARPER & F. JAMES, THE LAW OF TORTS §§25.6, 25.9 (1956 & Supp. 1968).

"[3] This is commonly stated and, presumably, widely supposed. Consider, however, the case of Mrs. O'Leary's cow, the Texas City disaster, the case of thalydomide, or the possible holocaust attendant on a nuclear incident. But even in these cases of 'mass tort' the physical consequences are far narrower than the indirect economic loss. See, e.g., Stevenson v. East Ohio Gas Co., 73 N.E.2d 200 (Ohio Ct. App. 1946).

"It is also true, on the other hand, that the economic harm likely to result from negligence is in some cases finite and easily predictable. See note 23 infra.

"[4] Ultramares Corp. v. Touche, Niven & Co., 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931) (Cardozo, C.J.). The opinion continues: '[t]he hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.' Id."

Professor Williston suggests that it is necessary to limit the scope of the action for negligent misrepresentation for "to hold every man liable for the consequences of words carelessly spoken would be to impose a degree of liability beyond what is reasonable." 12 Williston, *Contracts* sec. 1512, p. 471 (Jaeger 3d ed. 1970).[31]

Similarly, the draftsmen of the Restatement of Torts (Second), in discussing liability for information negligently supplied for the guidance of others in their business transactions, caution that the scope of liability for failing to exercise reasonable care in supplying correct information is not determined by the rules that govern liability for the negligent supplying of chattels that imperil the security of persons or property or other negligent misrepresentation that results in physical harm. When there is no intent to deceive, but only negligence, the fault of the maker of the misrepresentation is sufficiently less to justify a narrower responsibility for its consequences.

"The reason a narrower scope of liability is fixed for negligent misrepresentation than for deceit is to be found in the difference between the obligations of honesty and of care, and in the significance of this difference to the reasonable expectations of the users of information that is supplied in connection with commercial transactions. Honesty requires only that the maker of a representation speak in good faith and without consciousness of a lack of any basis for belief in the truth or accuracy of what he says. The standard of honesty is unequivocal and ascertainable without regard to the character of the transaction in which the information will ultimately be relied upon or the situation of the party relying upon it.

[31] In the case at bar it is alleged that the seller who would benefit from the sale to the buyer failed to disclose the material fact to the buyer. Thus some of the problems referred to in the texts cited, as to the extent of liability for careless misstatement, are not present in the instant case. *Stevenson v. Barwineck*, 8 Wis.2d 557, 564, 99 N.W.2d 690 (1959).

Any user of commercial information may reasonably expect the observance of this standard by a supplier of information to whom his use is reasonably foreseeable.

"On the other hand, it does not follow that every user of commercial information may hold every maker to a duty of care. . . .

"By limiting the liability for negligence of a supplier of information to be used in commercial transactions to cases in which he manifests an intent to supply the information for the sort of use in which the plaintiff's loss occurs, the law promotes the important social policy of encouraging the flow of commercial information upon which the operation of the economy rests. The limitation applies, however, only in the case of information supplied in good faith, for no interest of society is served by promoting the flow of information not genuinely believed by its maker to be true." Restatement (Second) of Torts, sec. 552, Comment *a* (1977). *See also,* Prosser, *Law of Torts* 704–710 (4th ed. 1971).

We need not decide at this time—and we do not decide at this time—whether the "second cause of action" of the complaint based on the theory of negligent misrepresentation for nondisclosure states a claim upon which relief could be granted. We have determined that the complaint states a claim for intentional misrepresentation and we need go no further.

Although in some cases this court has decided whether public policy precludes liability in negligence at the motion to dismiss stage, it has in many cases refused to decide the public policy question at the pleading stage of a case. We have stated that it is usually better practice to have a full factual resolution at trial before we evaluate the policy considerations involved. *Morgan v. Pennsylvania Gen'l Ins. Co.,* 87 Wis.2d 723, 737, 738, 275 N.W.2d 660 (1979); *Coffey v. Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132 (1976); *Kornitz v. Earling & Hiller, Inc.,* 49 Wis.2d 97, 103–104, 181 N.W.2d 403 (1970).

In the case at bar, the allegations of negligent conduct on the part of the seller are less than explicit; the facts

offered in the complaint as to the nature of the negligent conduct are at best sketchy. The complaint does not present a sufficient factual basis for us to consider, evaluate and resolve the public policy issues involved, including the impact the imposition of liability may have on vendors of real estate and on the security of real estate transactions.

We conclude that at the complaint and motion-to-dismiss stage in the case at bar we cannot resolve the public policy issues involved; a full trial must precede the trial court's and appellate court's determination of the issue as to what liability, if any, attaches to the seller for its failure to exercise ordinary care in ascertaining or disclosing the existence of the well. A trial court or jury finding as to negligence, damage and the causal relation between them would be material and helpful in evaluating the public policy considerations. *Coffey v. Milwaukee,* 74 Wis.2d 526, 543, 247 N.W.2d 132 (1976).

IV.

The seller further asserts that the complaint should be dismissed because "it is clear from the face of the complaint that plaintiff [buyer] was not damaged by his purchase of the lot." The seller correctly states that Wisconsin follows the benefit of the bargain rule in intentional misrepresentation cases. The seller's brief then asserts that there is no allegation in the complaint that the value of the land is less than the purchase price or that the home built is worth less today than what was paid for it. Such an allegation is not needed because it does not correctly reflect the measure of damages under the benefit of the bargain rule. Under the benefit of the bargain rule, the measure of the purchaser's dam-

ages is typically stated as the difference between the value of the property as represented and its actual value as purchased.[32]

The damages necessary to give the purchaser the benefit of the bargain will depend on the nature of the bargain and the circumstances of each case. It is not necessary in all cases to give the purchaser the value of the thing as represented. Under the benefit of the bargain rule, an alternative measure of recovery is the reasonable cost of placing the property received in the condition in which it was represented to be[33] and the purchaser is not limited to the direct damage, that is, compensation based on the difference between real and represented value. The purchaser may recover for indirect or consequential damages caused by the misrepresentation in addition to or in lieu of direct damages.[34]

The complaint alleges that the value of the property for residential purposes was less than represented and that the property was unsuitable for the intended use without added expenditures to cap the well and to redesign the house. The complaint therefore sets forth

[32] *Harweger v. Wilcox*, 16 Wis.2d 526, 533, 534, 114 N.W.2d 818 (1962); *Northern State Bank v. Biechler*, 53 Wis.2d 243, 246, 191 N.W.2d 921, 923 (1971); *Chimekas v. Marvin*, 25 Wis.2d 630, 633, 131 N.W.2d 297 (1964); *Anderson v. Tri-State Home Improvement Co.*, 268 Wis. 455, 464, 67 N.W.2d 853, 68 N.W.2d 705 (1955).

[33] McCormick, *Damages*, 454 (1935); 3 Restatement (Second) of *Torts*, comment *l* to sec. 549 (1977); *Nunn v. Howard*, 216 Ky. 685, 288 S.W. 678 (1926); *Shepard v. Cal-Nine Farms*, 252 F.2d 884, 886 (9th Cir. 1958), *cert. denied* 356 U.S. 951; *Bechtel v. Liberty Nat. Bank*, 534 F.2d 1335, 1341–1343 (9th Cir. 1976); Annot., *"Out of Pocket" or "Benefit of Bargain" as Proper Rule of Damages for Fraudulent Representations Inducing Contract for the Transfer of Property*, 13 ALR3d 875, 922 (1967).

[34] Prosser, *Law of Torts*, sec. 110, p. 735 (1971); McCormick, *Damages*, sec. 122, 459 (1935); 3 Restatement (Second) of *Torts*, sec. 549, Comment *d* (1977).

damage, an essential element of a claim based on the theory of intentional misrepresentation.

For the reasons set forth, we hold that the allegations of the complaint state a claim upon which relief can be granted and that the motion to dismiss the complaint was properly overruled.

*By the Court.*—Order affirmed.

CONNOR T. HANSEN, J. *(concurring)*. I concur with the result reached by the majority in this case. However, I am unable to join in the opinion of the court.

This is an appeal from an order overruling a motion to dismiss the amended complaint. Therefore, the single issue before this court is whether the complaint states any claim upon which relief can be granted. *Kurtz v. City of Waukesha,* 91 Wis.2d 103, 107, 280 N.W.2d 757 (1979) ; *Attoe v. Madison Pro. Policemen's Asso.,* 79 Wis. 2d 199, 205, 255 N.W.2d 489 (1977) ; *Int'l. Found. Emp. Ben. Plans v. Brookfield,* 74 Wis.2d 544, 548, 247 N.W.2d 129 (1976). Yet the majority opinion contains a dissertation of the law applicable to the claims for relief which are alleged. The opinion discusses at length such matters as the origin of the traditional rule that there is no duty to disclose in an arm's-length transaction, the creation of exceptions to this rule, the tests used by courts to determine whether the rule of non-disclosure should be abandoned, and the Restatement's formulation of a rule embodying the trend toward a more frequent recognition of a duty to disclose. In the opinion of this writer, such a discussion is inappropriate and totally unnecessary, because the only issue before the court is whether the pleadings set forth any facts upon which relief can be granted.

Moreover, having determined that the complaint states a claim for intentional misrepresentation, the majority

does not decide whether the complaint states a claim for negligent misrepresentation. Yet the opinion proceeds to discuss the public policy considerations that may preclude liability for negligence, and the reluctance of the courts to impose liability for negligent misrepresentation causing pecuniary loss. Liability is not at issue here. What is at issue is the sufficiency of the complaint. Since the majority concludes that it is unnecessary to determine whether the complaint states a cause of action for negligent misrepresentation, it would seem there is no reason to further discuss such a possible theory of recovery.

Except in the unusual case, this court has generally directed its attention to the issue of the appeal when considering the review of an order denying a motion to dismiss a complaint. In my opinion the court should adhere to this practice in the instant case. There is no necessity for expounding on various legal principles relating to the theories of recovery advanced by the plaintiff at the pleading stage. In most instances, attempting to decide the law of the case when the case has not been tried and the facts are not before the court is an appellate practice to be avoided.

Therefore, although I concur in the result reached by the majority, I respectfully decline to join the opinion.

I am authorized to state that Mr. Chief Justice BEIL-FUSS and Mr. Justice COFFEY join in this concurring opinion.